No. 23-6896

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
————————————

UNITED STATES OF AMERICA,
*Plaintiff - Appellant*,

v.

SHAHEEM JOHNSON,
*Defendant - Appellee.*
————————————

On Appeal from the United States District Court
for the Eastern District of Virginia
Alexandria Division (The Hon. Anthony J. Trena)
————————————

BRIEF OF THE APPELLEE
————————————

GEREMY C. KAMENS
Federal Public Defender

Nathaniel Wenstrup
Assistant Federal Public Defender
Counsel for Appellant
1650 King Street, Suite 500
Alexandria, VA 22314
(703) 600-0800
nate_wenstrup@fd.org

# TABLE OF CONTENTS

Table of Authorities ................................................................................. iii

Statement of Jurisdiction........................................................................1

Statement of the Issue ............................................................................1

Statement of the Case.............................................................................1

    A. Mr. Johnson had a tumultuous upbringing. ...............................2

    B. Mr. Johnson's involvement with a drug-trafficking conspiracy led
       to him being charged in connection with two deaths..........................3

    C. The Grand Jury issued a 19-count superseding indictment naming
       Mr. Johnson. ..............................................................................4

    D. Mr. Johnson has since acknowledged his past wrongs, and he has
       demonstrated a clear desire to improve.................................................5

    E. The District Court Grants Mr. Johnson's Renewed Motion for
       Compassionate Release ........................................................................6

Summary of Argument ...........................................................................12

Standard of Review.................................................................................13

Argument.................................................................................................14

I.     The District Court Acted Well Within Its Broad Discretion When It
       Granted Compassionate Release to Shaheem Johnson; Therefore, This
       Court Should Affirm.......................................................................14

    A.     Introduction ..........................................................................14

    B.     The Law of Compassionate Release Sentence Reduction
          Proceedings ...........................................................................15

1.   The Sentence Modification Statute, 18 U.S.C.
§ 3582(c)(1)...............................................................................16

2.   Both this Court and the Supreme Court urge deference to
district courts in the § 3582(c) context. ...................................17

C.   Congress has not barred 18 U.S.C. § 1959(a)(1) or any other
crimes from relief under 18 U.S.C. § 3582(c)....................................18

D.   The Government asks this Court to make new law superseding
Congress and contradictory to Supreme Court findings. ...................21

1.   Without authority, the government argues that Mr.
Johnson's stacked § 924(c) sentences cannot be an
extraordinary and compelling reason to reduce his
sentence in its entirety...............................................................24

2.   Without authority, the government argues that the
Supreme Court's intervening decision in *United States v.
Booker* cannot be an extraordinary and compelling reason
to reduce Mr. Johnson's sentence. ...........................................25

E.   The Government Cannot Cite to any Authority that the Court
abused its discretion in finding Mr. Johnson's Youth to be
extraordinary and compelling..........................................................29

F.   The Government's arguments fail to address the district court's
discretion to find that a totality of circumstances, including
"exceptional" rehabilitation amount to extraordinary and
compelling reasons. .........................................................................31

Conclusion .........................................................................................34

Statement Regarding Oral Argument ...................................................36

# TABLE OF AUTHORITIES

## Cases

*Chavez-Meza v. United States*, 138 S. Ct. 1959 (2018)..........................12

*Concepcion v. United States*, 597 U.S. 481 (2022) ........................ *passim*

*Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999) ................16

*Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 5 F.4th
    407 (4th Cir. 2021), *as amended* (July 15, 2021), *vacated as moot*,
    14 F.4th 322 (4th Cir. 2021) ........................................................8

*Kimbrough v. United States*, 552 U.S. 85, 103 (2007) .........................24

*Lopez v. United States*, No. CR 97-01117 ACK (02), 2016 WL 4766477
    (D. Haw. Sept. 12, 2016) .................................................................20

*McCoy v. United States*, No. 2:03-er-197, 2020 WL 2738225
    (E.D. Va. May 26, 2020), *aff'd*, 981 F.3d 271 (4th Cir. 2020) ...................29

*United States v. Arvizu*, 534 U.S. 266 (2002)..........................................32

*United States v. Booker*, 543 U.S. 220 (2005).........................................8

*United States v. Curtis*, No. CR 03-533 (BAH), 2020 WL 1935543
    (D.D.C. April 22, 2020) ...................................................................21

*United States v. Davis*, 99 F.4th 647 (4th Cir. 2024) ..............................32

*United States v. Ferebe*, No. CCB-96-0401, 2023 WL 6809707
    (D. Md. Oct. 16, 2023) ....................................................................20

*United States v. Ferguson*, 55 F.4th 262 (2022) ....................................10

*United States v. Fisher*, 493 F. Supp. 3d 231, 239 (S.D.N.Y. 2020)......................20

*United States v. Frazer*, 98 F.4th 102 (4th Cir. 2024)............................31

*United States v. Gray*, No. CCB-95-364, 2021 WL 1856649
(D. Md. May 10, 2021).......................................................... 20, 27

*United States v. Hargrove*, 30 F.4th 189 (4th Cir. 2022) ................................. 32, 33

*United States v. Hope*, No. 90-CR-06108-KMW-2, 2020 WL 2477523 (S.D. Fla.
April 10, 2020).................................................................21

*United States v. Hunter*, 12 F.4th 555 (6th Cir. 2021)............................................28

*United States v. Jenkins*, 50 F.4th 1185 (D.C. Cir. 2022) ........................................27

*United States v. Legree*, 205 F.3d 724 (4th Cir. 2000) ............................................1

*United States v. Mann*, 709 F.3d 301 (4th Cir. 2013) ...........................................14

*United States v. McCall*, 56 F.4th 1048 (6th Cir. 2022)........................................30

*United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020) .................................. *passim*

*United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058
(S.D.N.Y. April 6, 2020) ...................................................21

*United States v. Munn*, 595 F.3d 183 (4th Cir. 2010)............................................1

*United States v. Rios*, No. 3:94CR112 (JBA), 2020 WL 7246440,
(D. Conn. Dec. 8, 2020).....................................................20

*United States v. Stoddard*, No. 1:14-CR-76, 2021 WL 2379568
(E.D. Va. June 9, 2021), *aff'd*, No. 21-7463, 2021 WL 6116619
(4th Cir. Dec. 27, 2021) ................................................ 22, 24 25

*United States v. Tidwell*, No. CR 94-353, 2020 WL 4504448
(E.D. Pa. Aug. 5, 2020) ...................................................21

*United States v. Williams*, No. 3:04CR95/MCR, 2020 WL 1751545
(N.D. Fla. Apr. 1, 2020) ..................................................21

*United States v. Wilson*, 77 F.4th 837 (D.C. Cir. 2023) ........................................27

## Statutes

18 U.S.C. § 922 ................................................................................................5

18 U.S.C. § 924 .........................................................................................*passim*

18 U.S.C. § 1956 ............................................................................................5

18 U.S.C. § 1959 .......................................................................................*passim*

18 U.S.C. § 3231 ............................................................................................1

18 U.S.C. § 3553 ............................................................................................7

18 U.S.C. § 3559 ..........................................................................................25

18 U.S.C. § 3582 .......................................................................................*passim*

18 U.S.C. § 3632 ..........................................................................................19

18 U.S.C. § 3742 ............................................................................................1

21 U.S.C. § 841 ..............................................................................................5

21 U.S.C. § 848 ..............................................................................................4

28 U.S.C. § 994 ............................................................................................32

28 U.S.C. § 1291 ............................................................................................1

## United States Sentencing Guidelines

U.S.S.G. § 1B1.10 ........................................................................................19

U.S.S.G. § 1B1.13 ........................................................................................23

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this federal criminal case pursuant to 18 U.S.C. § 3231. That court issued an order granting compassionate release to Shaheem Johnson pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) on August 8, 2023. J.A.722. The government filed a notice of appeal on September 6, 2023. J.A.723-24. This Court has stated that its jurisdiction over an appeal of a § 3582(c) sentence reduction proceeding arises under either 18 U.S.C. § 3742, *see United States v. Legree*, 205 F.3d 724, 727 (4th Cir. 2000) (jurisdiction over appeal from denial of § 3582(c)(2) motion governed by 18 U.S.C. § 3742), or 28 U.S.C. § 1291, *see United States v. Munn*, 595 F.3d 183, 186 (4th Cir. 2010) (jurisdiction over appeal from denial of § 3582(c)(2) motion governed by 28 U.S.C. § 1291).

## STATEMENT OF THE ISSUE

Whether the district court's identification of "extraordinary and compelling" reasons for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i) were within its discretion under the authority granted to it by Congress.

## STATEMENT OF THE CASE

The government has appealed the district court's order reducing Mr. Johnson's two life sentences consecutive to 790 months to a total sentence of 420 months. In arriving at its conclusion, the district court made detailed factual findings about Mr. Johnson's background, the offense conduct, the circumstances of Mr.

1

Johnson's codefendants, and changes in the law. The government does not contest any of these factual findings; they simply disagree with the conclusion and ask this Court to replace the district court's analysis with its own.

A. Mr. Johnson had a tumultuous upbringing.

Mr. Johnson and his twin brother, Raheem, were born on February 10, 1972, to a mother who "ha[d] a long history of substance abuse." J.A.753. Born prematurely, Mr. Johnson weighed just four pounds, and the medical staff believed it was due to his mother's continued use of heroin while pregnant. *Id.* The twins were placed in foster care after a three-month hospital stay because of safety concerns with their mother. *Id.*

Mr. Johnson's early life was marked by tragedy. The man who Mr. Johnson believed to be his father, Eugene Quailey, severely abused his mother in front of him both physically and mentally. *Id.* The twins witnessed Quailey abuse their mother often, and, on one occasion, the twins attacked him with a plastic knife while he was asleep. *Id.* Mr. Johnson was also "molested by some of his mother's boyfriends and other people in the neighborhood." *Id*. Finally, Mr. Johnson's half-sister, Botana Johnson, died when she was less than one year old after "she ingested methadone that was out on the coffee table in her mother's home." J.A.755.

On March 31, 1979, Mr. Johnson and Raheem were placed in emergency foster care and then long-term foster care in Brooklyn, New York. J.A.754. Their

foster father, Earl Hudgins, died four months after the twin's placement in long-term foster care which greatly upset Mr. Johnson who had made "remarkable progress while living with the Hudgins." *Id.* Their mother reportedly wanted custody back of the twins, but she did not comply with social services or make frequent visits with the twins until March of 1985. *Id.*

At twelve, the twins returned home and needed to help their mother make ends meet, so they began a paper route. *Id.* They were robbed multiple times while delivering papers in their neighborhood. *Id.*

B.  Mr. Johnson's involvement with a drug-trafficking conspiracy led to him being charged in connection with two deaths.

Mr. Johnson was exposed to drug dealing at an early age by older drug dealers in his neighborhood. [1] *Id.* Beginning in 1992, Mr. Johnson and his twin began to distribute "crack" cocaine. J.A.735. Raheem began supplying the cocaine to two others who would then sell the drugs and give a portion of the proceeds to the twins. J.A.735. The enterprise flourished under the twins, and they began buying real and personal property to launder the money. *Id.*

The criminal enterprise resulted in the deaths of five people: Antonio Stevens, Bernard Franklin, Eldon Brown, Shawn Thomas, and Tracy Morgan. J.A.745. Four of them unindicted co-conspirators. *Id.* Even though he was only convicted with

---

[1] Mr. Johnson has a prior conviction for first degree robbery at 17 years old. J.A.751-752.

offenses related to two deaths, at the district court hearing on his motion, Mr. Johnson accepted responsibility for all their deaths due to his leadership role in the organization. J.A.677-679. Bernard Franklin was shot by Mr. Johnson and ultimately killed by Raheem after the brothers learned that Bernard abducted and raped Cheryl Foreman, Mr. Johnson's girlfriend, and stole $100,000 in drug proceeds. J.A.740-741. Mr. Johnson and Raheem hired Eldon Brown to kill Richard Villa for planning to betray the twins by robbing and killing them. J.A.742. The twins were arrested in August 1997. J.A.753.

### C. The Grand Jury issued a 19-count superseding indictment naming Mr. Johnson.

On November 6, 1997, a second 19-count superseding indictment was filed, naming Mr. Johnson in counts one through five, and thirteen through nineteen. J.A.730-731. On December 17, 1998, following a jury trial, Mr. Johnson was convicted of twelve offenses:

- operating a criminal enterprise in violation of 21 U.S.C. § 848 (Count 2),

- voluntary manslaughter of Bernard Franklin using a firearm during a drug trafficking operation in violation of 18 U.S.C. § 924(c) and (j) (Count 4),

- aiding and abetting the murder of Richard Villa in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1)&(2) (Count 5),

- conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count 13),

- carrying a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c) (Counts 14, 16, and 17),

- distribution of 50 grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1) (Count 15),

- possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g) (Count 18), and

- possession with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1) (Count 19).

J.A.726.

Mr. Johnson was sentenced to two life terms on Counts 2 and 5 plus 790 months imprisonment. J.A.789. At sentencing, Mr. Johnson accepted responsibility for his crimes lamenting: "I sold drugs, that's what I did. And along the way, I either, directly or indirectly, set the atmosphere for many people to get hurt and to lose their lives." J.A.353.

Through postconviction litigation, Count 1 was dismissed; Mr. Johnson's appeals were unsuccessful.

### D. Mr. Johnson has since acknowledged his past wrongs, and he has demonstrated a clear desire to improve.

The reality of a life sentence did not hinder Mr. Johnson from committing himself to rehabilitation. Since 2009, Mr. Johnson has had no infractions pertaining to drugs and intoxicants; since 2013, Mr. Johnson has had no infractions at all. J.A.453. Mr. Johnson completed almost 1,000 hours of educational classes, preparing himself and others for reentry after he himself was certified as an

instructor. J.A.433. In March of 2019, BOP stated that Mr. Johnson "has facilitated several release planning programs and has been instrumental to aiding other inmates in the Transition Unit." J.A.454. He has also "developed an above average and appropriate rapport with staff and can be counted on to lead his peers by example." *Id.* Mr. Johnson has received a certificate of completion for "Legal Assistant/Paralegal" course and the "Electrician Apprenticeship Exam" through the state of West Virginia. J.A.451, J.A.544 (respectively).

E. The District Court Grants Mr. Johnson's Renewed Motion for Compassionate Release

Mr. Johnson filed a pro se motion for compassionate release, which was later supplemented by counsel. Mr. Johnson presented multiple extraordinary and compelling reasons for release, including his exceptional rehabilitation, his youth at the time of his conduct, dramatic intervening changes in the law, and a change in Department of Justice charging policies.

The government opposed the motion, claiming that none of these circumstances – either individually or taken together – amounted to extraordinary and compelling reasons for a sentence reduction.

The district court then held a hearing where it heard arguments from counsel, as well as testimony from one victim's family, Mr. Johnson's daughter, and Mr. Johnson himself. J.A.639-685. The court did not orally pronounce its decision but stated a written order would follow.

The district court granted compassionate release to Mr. Johnson, issuing a written opinion. J.A.691-724. As required by the statute, the district court considered both whether extraordinary and compelling reasons for release existed and a balancing of the § 3553(a) factors. J.A.716-722. The opinion explained the court's analysis at length.

Because the district court's consideration of extraordinary and compelling reasons is the sole issue on appeal, Mr. Johnson will describe that portion of its decision in some detail. Before reaching the arguments, the district court recounted the facts underlying the conviction. J.A.691-692; *see* 18 U.S.C. § 3553(a)(1) ("the nature and circumstances of the offense"). The court also accurately summarized the compassionate release statutory scheme. J.A.696-697.

The district court then moved on to detailed factual findings about each of the nine extraordinary and compelling reasons asserted by Mr. Johnson, as well as the totality of the extraordinary and compelling reasons.

First, the district court addressed Mr. Johnson's exceptional rehabilitation, finding that:

> [t]here is no doubt that in the more than quarter-century that Johnson has spent in the BOP for his offenses, he has engaged in activities that reflect an extraordinary commitment to rehabilitation. He has been a model inmate for over a decade, a fact that the Government does not appear to dispute.

J.A.698.

The district court summarized Mr. Johnson's efforts and concluded that:

> In summary, Johnson's efforts at rehabilitation have been exceptional, particularly given so much of his rehabilitative activities occurred before passage of the First Step Act when there were no significant prospects for release and it appeared that he would serve his life sentences without reduction, reflecting that his motivations for rehabilitation are by all indications sincere.

*Id*.

Second, the Court addressed the mitigating impact of Mr. Johnson's youth at the time of the offense and reviewed Fourth Circuit case law on the relevance of youth, from *United States v. McCoy* to *Hirschfeld*.[2] J.A.699. After this review, the Court concluded

> While nothing excuses Johnson's conduct, the horrific circumstance in which he was raised is properly to be considered in connection with his age at the time of his offense conduct; and his ability to serve in the BOP without a disciplinary issue for the past decade is evidence of his subsequent maturity. Accordingly, Johnson's age at the time his offense conduct began, continuing through his arrest, weighs in favor of relief.

J.A.701.

Third, the Court considered whether the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005) subsequent to Mr. Johnson's sentencing established an extraordinary and compelling reason for a sentence reduction. The

---

[2] *United States v. McCoy*, 981 F.3d 271, 288 (4th Cir. 2020); *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 5 F.4th 407, 476 (4th Cir. 2021), *as amended* (July 15, 2021), *vacated as moot*, 14 F.4th 322 (4th Cir. 2021) (Wynn, J., dissenting).

Court reviewed the applicable case law, as well as the ambiguity in the record on Count 2. J.A.701-702. The Court also considered a letter from the sentencing judge, which stated:

> I was the judge who heard the trial and sentenced Shaheem Johnson. At the time of his sentencing, if I were I [sic] not bound by the mandatory US Sentencing Guidelines and mandatory life sentence by statute, I would have imposed a substantial sentence of years, not life without parole. I thought then and now that the Shaheem Johnson sentence was excessive.

J.A.703. The Court also reviewed a letter from the jury foreman, which stated:

> We did not feel the death sentence was warranted, an so we had only a life sentence to choose. Had we been able to recommend a sentence of considerable time, with the chance for parole, I believe there were enough people in the group who believed that was right, that we likely would have recommended a sentence of reduce (sic) years than a life sentence.

J.A.703-704. After a detailed review of the record and the law, the Court considered "the underlying doctrinal sentiments in *Booker* as a consideration, not a standalone justification for whether extraordinary and compelling reasons exist to reduce Johnson's sentence." J.A.704.

Fourth, the Court considered whether the unwarranted sentencing disparities in the case established an extraordinary and compelling reason for a sentence reduction. After reviewing the case law, the Court conducted a detailed review of both the conduct and the sentences of each codefendant and

coconspirator. J.A.705-708. The Court concluded that "[o]n balance, there are sentencing disparities that weigh in favor of granting relief." J.A.708.

Fifth, the district court considered this Court's precedent and Mr. Johnson's stacked convictions under 18 U.S.C. § 924(c) as a basis to find an extraordinary and compelling reason for a sentence reduction. The Court concluded that "notwithstanding the seriousness of Johnson's underlying offenses, the massive disparity resulting from the statutory changes to § 924(c) present an extraordinary and compelling reason in this case." J.A.710.

Sixth, the Court considered Mr. Johnson's argument that this Court's identification of plain error in the jury instructions established an extraordinary and compelling reason for a sentence reduction. The Court determined this argument did not "bear on whether extraordinary and compelling circumstances exist to justify relief." J.A.711.

Seventh, the Court considered that Mr. Johnson's stacked § 924(c) sentences occurred prior to a 1999 Department of Justice charging memorandum (the "Robinson Memo") instructing U.S. Attorneys that in charging multiple counts of § 924(c) violations, each count should be based on a separate predicate count. Had Mr. Johnson been charged after this memorandum was issued, the government would have likely charged only two – rather than four – § 924(c) counts. The Court directly addressed the

government's argument that this argument was a collateral attack on Mr. Johnson's sentence barred by this Court's decision in *United States v. Ferguson*, 55 F.4th 262 (2022). J.A.713-714. The Court found that this was a policy change, not a collateral attack, that yielded "a massive disparity between Johnson's sentence and that of a defendant sentenced today". J.A.714. The Court concluded that "while not alone sufficient to warrant relief, the Court finds this argument to be a relevant consideration that weighs in favor of reducing Johnson's § 924(c)-related counts." *Id.*

Eighth, the Court considered Mr. Johnson's argument that Count 2 was a "covered offense" under the First Step Act. The Court reviewed the case law and determined that a sentence reduction under § 3582(c)(1)(A) is an "inappropriate vehicle" for relief and declined to reduce Mr. Johnson's sentence on that basis. J.A.715.

Finally, the Court found that the balance of the § 3553(a) factors counseled in favor of a substantial sentence of years less than life in prison. J.A.721. The Court granted Mr. Johnson's motion for compassionate release and reduced his sentence "to a total period of incarceration of 420 months, or 35 years, with credit for time served and before application of any good time or other credits" and 10 years of supervised release. *Id.*

On September 6, 2023, the government noted an appeal. JA.723-24.

# SUMMARY OF ARGUMENT

The government's appeal is a simple disagreement with the district court's assessment of extraordinary and compelling reasons – and a desire to replace the court's judgment with its own. The district court found that four of Mr. Johnson's arguments weighed in favor of relief, a fifth warranted consideration, a sixth amounted to an extraordinary and compelling reason to reduce his 924(c) sentences, and that in totality, the circumstances presented extraordinary and compelling reasons to reduce his sentence. The district court in this case properly exercised its authority under 18 U.S.C. § 3582(c)(1)(A)(i) and granted compassionate release to Mr. Johnson. The government now argues that none of the six arguments cited by the district court individually or in their totality present an extraordinary and compelling reason to reduce his sentence.

The government has conceded that the first of the three applicable statutory requirements, administrative exhaustion, was met. J.A.397. The government has waived any challenge to the district court's determination that the 3553(a) factors warranted relief. The government has also waived any argument that the district court's 32-page opinion did not meet its obligations to explain itself as set by the Supreme Court in *Chavez-Meza v. United States*, 585 U.S. 109, 113 (2018).

The district court's discretion is even wider in § 3582 sentence reduction proceedings in which Congress has not only expressly vested that decision making

12

authority in the district courts, but also recently expanded the availability of that form of relief with the express purpose of increasing its use. This Court has held that the First Step Act's amendment of the compassionate release statute "gives new discretion to the courts to consider leniency." *McCoy*, 981 F.3d at 288 (cleaned up). The Supreme Court has affirmed that: "Nothing in the text and structure of the First Step Act expressly, or even implicitly overcomes the established tradition of district courts' sentencing discretion." *Concepcion v. United States*, 597 U.S. 481, 495 (2022).

The district court's written order granting compassionate release in this case followed multiple rounds of briefing and a hearing on the facts and the law. The district court's order reducing Mr. Johnson's sentence was detailed, directly addressed and rejected the government's arguments, and made findings of fact, none of which were clearly erroneous.

The government simply disagrees, seeking to replace the district court's consideration and assessment of the extraordinary and compelling reasons with its own. This Court should affirm the district court.

## STANDARD OF REVIEW

This Court reviews a district court's order granting compassionate release for an abuse of discretion. *McCoy*, 981 F.3d at 280. This Court has held that it is

"obliged to accord substantial deference to a district court's interpretation of its own judgment." *United States v. Mann*, 709 F.3d 301, 305 (4th Cir. 2013).

## ARGUMENT

I. THE DISTRICT COURT ACTED WELL WITHIN ITS BROAD DISCRETION WHEN IT GRANTED COMPASSIONATE RELEASE TO SHAHEEM JOHNSON; THEREFORE, THIS COURT SHOULD AFFIRM.

A. Introduction

The government's appeal is a simple disagreement with the district court's detailed and accurate analysis of the facts of this case. The district court reduced Mr. Johnson's sentence after he had served decades in prisons for his 1998 convictions. The district court found that Mr. Johnson has demonstrated "exceptional" rehabilitation – long after his last appeal was denied. The district court found that he was sentenced in a very different legal landscape: before *United States v. Booker*, before the Justice Department's 1999 charging memo, before the First Step Act, and before *United States v. McCoy*. The district court also found that cooperation could not justify the severe disparities in his multiple life sentences and the 5-year, 20-year, and 40-year sentences received by cooperating coconspirators. The district court then provided a detailed explanation for why in this case, these facts amounted to extraordinary and compelling reasons for release.

The government has not alleged any factual error, only that the district court's decision was an abuse of the broad discretion given to it in the § 3582(c) context.

The government's straightforward appeal has a straightforward response: the district court's decision must be affirmed because it was well within "the established tradition of district courts' sentencing discretion." *Concepcion*, 597 U.S. at 495.

B.     The Law of Compassionate Release Sentence Reduction Proceedings

District courts have the discretion to reduce a previously imposed sentence only in certain (and few) circumstances, one of which is provided for in the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). In the First Step Act, Congress amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants themselves to move for a sentence reduction based upon "extraordinary and compelling reasons." Section 3582(c)(1)(A) states in relevant part that the district court "may reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]"

Congress intended to increase the availability and use of compassionate release by removing the Bureau of Prisons from its prior role as gatekeeper. *Id.* Rather than substitute another agency within the Department of Justice, for example, Congress vested that discretion in the district courts.

Congress thus expressly expanded the availability of compassionate release in 2018 and, as this Court held in *McCoy*, "expanded the discretion of the courts to

15

consider leniency." 981 F.3d at 288 (cleaned up). The Supreme Court has explicitly affirmed that discretion in the compassionate release context: "Nothing in the text and structure of the First Step Act expressly, or even implicitly, overcomes the established tradition of district courts' sentencing discretion." *Concepcion*, 597 U.S. at 495.

1. The Sentence Modification Statute, 18 U.S.C. § 3582(c)(1)

Section 3582(c) of Title 18 imposed four requirements before a district court may modify a sentence of imprisonment: 1) administrative exhaustion; 2) extraordinary and compelling reasons warranting a reduction; 3) consideration of the § 3553(a) factors to the extent they are applicable; and 4) "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A)(i).

In this case, the government conceded that Mr. Johnson administratively exhausted, J.A.397, and waived any challenge to the Court's analysis of the § 3553(a) factors. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 241 (4th Cir. 1999) (holding that failure to include appellant's contentions and the reasons for them in the argument section of the opening brief "triggers abandonment of that claim on appeal").

Thus, the district court's finding of extraordinary and compelling reasons for release is all that is at issue in this appeal.

2. <u>Both this Court and the Supreme Court urge deference to district courts in the § 3582(c) context.</u>

Binding authority from this Court and the Supreme Court repeatedly command deference to § 3582(c) determinations made by district courts, like the one made in this case. In *Concepcion*, the Supreme Court affirmed the history of broad judicial discretion in both the sentencing and sentencing modification contexts. The Court was explicit in the First Step Act's impact on this discretion. "The broad discretion that the First Step Act affords to district courts also counsels in favor of deferential appellate review." *Concepcion*, 597 U.S. at 484. "Other than legal errors in recalculating the Guidelines to account for the Fair Sentencing Act's changes, appellate review should not be overly searching." *Id.* at 485 (internal citations omitted). The Court could not have been clearer: "Nothing in the text and structure of the First Step Act expressly, or even implicitly, overcomes the established tradition of district courts' sentencing discretion." *Id.* at 495.

The district court's discretion in assessing extraordinary and compelling circumstances is manifestly broad, particularly in the context of compassionate release under 18 U.S.C. § 3582(c)(1)(A), a statute that by its plain language grants expanded discretion to the district court. *McCoy*, 981 F.3d at 288 ("[W]hile the finality of sentences is an important principle, § 3582(c)(1)(A) represents Congress's judgment that the generic interest in finality must give way in certain individual cases, … and authorizes judges to implement that judgment") (cleaned up).

Consistent with the emphasis on deference to the district court by this Court and the Supreme Court, this Court should affirm the district court's detailed analysis of extraordinary and compelling reasons in this case.

C.   Congress has not barred 18 U.S.C. § 1959(a)(1) or any other crimes from relief under 18 U.S.C. § 3582(c).

The compassionate release statute provides that the district court may grant compassionate release "in any case" where there are extraordinary and compelling circumstances and "after considering the factors set forth in section § 3553(a) to the extent that they are applicable[.]" 18 U.S.C. § 3582(c)(1)(A). The district court's decision to reduce Mr. Johnson's sentence was based on the facts of this case and grounded in binding precedent. While the government does not explicitly argue that the § 1959(a)(1) conviction precludes relief, much of the government's argument against the district court's finding of extraordinary and compelling reasons is based on Mr. Johnson's conviction on Count 5, 18 U.S.C. § 1959(a)(1), for which he received a life sentence. J.A.692.[3] An explicit argument that the § 1959(a)(1) conviction precludes relief would fail because there is no authority for such an argument. There is plainly no ban on relief under 18 U.S.C. § 3582 or the First Step

---

[3] At the time of sentencing, the statute required either a life sentence or death sentence where a defendant was convicted under § 1959(a)(1). This penalty scheme remains unchanged today.

Act for defendants convicted under § 1959(a)(1) – not in the statute itself, the legislative history, or the case law.

In addition to Congress's explicit inclusion of "any case", the compassionate release statute does not exclude any defendant from relief based on the crime of conviction. Congress knows how to exempt categories of defendants from specified forms of relief when it chooses to do so. In fact, in the same statute in which Congress expressly acted to *expand* the availability of compassionate release, Congress created earned time credits, in which federal prisoners can earn extra time off their sentences by completing certain courses while in BOP custody. When it created earned time credits in the First Step Act, Congress expressly made individuals who had been convicted of certain crimes ineligible for that form of relief. *See* 18 U.S.C. § 3632(d)(4)(D) (listing code sections, stating: "A prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction under any of the following provisions of law."); *see also* U.S.S.G. § 1B1.10(b) (restricting eligibility for § 3582(c)(2) sentence reductions).

Had Congress wanted people who had been convicted of particular crimes or categories of crimes to be ineligible for compassionate release, it easily could have stated as much when it amended the compassionate release statute in the First Step Act in 2018, just as it did with regard to earned time credits. It did not. On the

contrary, Congress expressly expanded sentence reduction through the First Step Act and left it available "in any case." 18 U.S.C. § 3582(c)(1).

Where the government has suggested limitations on district courts' discretion, the government does not present any case law that prohibits a reduction of any sentence stemming from any crime of conviction under the compassionate release statute. In fact, the case law from around the federal judiciary presents the opposite conclusion. *See, e.g., United States v. Rios*, No. 3:94CR112 (JBA), 2020 WL 7246440, at *5 (D. Conn. Dec. 8, 2020) (granting release for defendant convicted of § 1959(a)(1) serving six life sentences based on COVID-19 pandemic, rehabilitation, sentencing disparities); *United States v. Gray*, No. CCB-95-364, 2021 WL 1856649, at *1 (D. Md. May 10, 2021) (reducing life sentence for § 1959(a)(1) consecutive to five year sentence for § 924(c) to time served); *United States v. Ferebe*, No. CCB-96-0401, 2023 WL 6809707, at *1 (D. Md. Oct. 16, 2023) (reducing a life sentence for § 1959(a)(1) to 35 years); *Lopez v. United States*, No. CR 97-01117 ACK (02), 2016 WL 4766477, at *20 (D. Haw. Sept. 12, 2016) (reducing a defendant's jury-imposed life sentence to time served after twenty-three years of rehabilitation in prison); *United States v. Fisher*, 493 F. Supp. 3d 231, 239 (S.D.N.Y. 2020) (granting compassionate release for a defendant who has served thirty-eight years of a life sentence after he showed that his age, health, and risk of contracting COVID-19, in combination with his exceptional rehabilitation efforts,

warranted release); *United States v. Hope*, No. 90-CR-06108-KMW-2, 2020 WL 2477523, at \*14 (S.D. Fla. April 10, 2020) (reducing a mandatory minimum life sentence due to sentence disparities, the defendant's rehabilitation, and his health risk due to COVID-19); *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at \*15 (S.D.N.Y. April 6, 2020) (granting compassionate release to defendant serving a life sentence upon evidence of his rehabilitation, remorse, and record as a "model prisoner."); *United States v. Tidwell*, No. CR 94-353, 2020 WL 4504448, at \*11 (E.D. Pa. Aug. 5, 2020) (releasing a man serving a life sentence for, among other things, two counts of murder in furtherance of a continuing criminal enterprise); *United States v. Curtis*, No. CR 03-533 (BAH), 2020 WL 1935543, at \*1 (D.D.C. April 22, 2020) (releasing defendant under § 3582(c)(1)(A) despite his six concurrent terms of life for operation of a sex-trafficking ring involving minors); *United States v. Williams*, No. 3:04CR95/MCR, 2020 WL 1751545, at \*3 (N.D. Fla. Apr. 1, 2020) (granting release and reducing a life sentence for conviction of armed robbery because defendant's health concerns were serious enough that "an outbreak of COVID-19 in [Defendant's] facility would likely have fatal consequences for him").

     D.    <u>The Government asks this Court to make new law superseding</u>
                <u>Congress and contradictory to Supreme Court findings.</u>

Congress has never limited district courts' discretion under § 3582(c) by excluding convictions with unchanged sentencing schemes, nor is there evidence

that such a change was considered in the legislative history. Courts have routinely granted to defendants whose convictions are unchanged by intervening law. *United States v. Stoddard*, No. 1:14-CR-76, 2021 WL 2379568, at *2-3 (E.D. Va. June 9, 2021), *aff'd*, No. 21-7463, 2021 WL 6116619 (4th Cir. Dec. 27, 2021). The government argues that "because Johnson would still face a statutory mandatory minimum of life imprisonment on Count 5 if sentenced under the advisory Guidelines, the district court abused its discretion in finding" extraordinary and compelling reasons for release. Corrected Opening Brief of the United States (Govt.) at 45. The government cites no authority for this position – that a conviction with unchanged sentencing law precludes a finding of extraordinary and compelling reasons based on other intervening changes in the law. Moreover, the government's position directly contradicts the Supreme Court's recitation of the law in *Concepcion*:

> "[i]n many cases, a district court is prohibited from recalculating a Guidelines range in light of nonretroactive Guidelines amendments, but the court may find those amendments to be germane when deciding whether to modify a sentence at all, and if so, to what extent."

*Concepcion*, 597 U.S. at 494.

The government cannot cite precedent or authority from this Court of the Supreme Court for a rule placing such constraints on a district court's discretion. As the Supreme Court stated in *Concepcion*, "Congress is not shy about placing such

limits [on "a court's discretion to consider any relevant materials…in modifying that sentence] where it deems them appropriate." *Concepcion*, 597 U.S. at 494.

One example of such a limitation on the district court's discretion is the role of rehabilitation in the § 3582 context. Despite finding that Mr. Johnson's rehabilitation was "exceptional" and weighed "heavily in his favor", the district court identified and followed Congress's limitation that such rehabilitation alone cannot be grounds for relief. J.A.698. Again, the Supreme Court has been explicit that additional limitations, such as the one proposed by the government, do not exist: "[i]t is only when Congress or the Constitution limits the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence, that a district court's discretion to consider information is restrained. Nothing in the First Step contains such a limitation." *Concepcion*, 597 U.S. at 486-87.[4]

Where the government continues to argue for a limitation based on the §1959(a)(1) sentence, the *Concepcion* Court was also clear that "[d]rawing meaning from silence is particularly inappropriate in the sentence context, 'for Congress has shown that it knows how to direct sentencing practices in express terms'".

---

[4] Just as Congress did not exclude particular convictions or sentences from § 3582 relief, the Sentencing Commission did not impose any such limits in its 2023 amendments to U.S.S.G. § 1B1.13.

*Concepcion*, 597 U.S. at 497 (citing *Kimbrough v. United States*, 552 U.S. 85, 103 (2007)).

> 1.  <u>Without authority, the government argues that Mr. Johnson's stacked § 924(c) sentences cannot be an extraordinary and compelling reason to reduce his sentence in its entirety.</u>

In arguing the stacked § 924(c) sentences aren't an extraordinary and compelling reason, the government cites no authority for its position that district courts do not have discretion to consider intervening changes in the law unless the changes apply to the entirety of a sentence. Without authority from this Court, the Supreme Court, or Congress, the government cites *Stoddard*, 2021 WL 2379568 at *2-3, in which the district court reduced the defendant's sentence of life consecutive to seventy-five years to simply a life sentence. Stoddard was convicted of three § 924(c) convictions, and he received three consecutive 25-year sentences for those convictions. He was also convicted under § 3559(c)(1) and sentenced to life in prison. *Id.* Stoddard argued for a sentence reduction for two extraordinary and compelling reasons – his stacked § 924(c) sentences and his vulnerability to COVID-19. *Id*. The district court determined that, given this Court's decision in *McCoy*, the stacked § 924(c) sentences were an extraordinary and compelling reason to reduce the § 924(c) sentences. *Id.*

What the government neglects to mention is that in his pro se motion, Stoddard conceded that because he had a prior conviction under § 924(c), the First

Step Act effect would not have affected his sentence. *Stoddard*, No. 1:14-cr-76, (E.D. Va. June 9, 2021), ECF No. 376 at 11. As a result, *Stoddard* stands for the exact opposite principle that the government has advocated: the *Stoddard* court found that intervening law that would not have changed the defendant's sentence but still found it to be an extraordinary and compelling reason to reduce the § 924(c) sentences. The district court was silent as to whether it found extraordinary and compelling reasons to reduce the life sentence; however, the court explicitly identified its considerations for not further reducing the sentence – the mandatory minimum on the 18 U.S.C. § 3559(c)(1) conviction, deterrence to the defendant (a "self-described career bank robber" beginning at age 19 and sentenced for the instant offenses at 57 years old), public safety, and a lack of remorse by the defendant. *Id.* In citing the mandatory life sentence as a factor, the district court did not cite any authority precluding relief – only listing it as one of many factors in the court's decision. *Id.* As every motion must be assessed on an individualized basis, the district court's detailed opinion in Mr. Johnson's case makes clear that it reviewed these factors and more – and determined that nearly all favored release.

> 2. Without authority, the government argues that the Supreme Court's intervening decision in *United States v. Booker* cannot be an extraordinary and compelling reason to reduce Mr. Johnson's sentence.

In 2005, seven years after Mr. Johnson was sentenced, the Supreme Court decided *United States v. Booker* and made the Sentencing Guidelines advisory,

rather than mandatory. The district court concluded that it would "consider the underlying doctrinal sentiments in *Booker* as a consideration, not a standalone justification, for whether extraordinary and compelling reasons exist to reduce Johnson's sentence." J.A.704.

Here, again, the government argues without authority that "because Johnson would still face a statutory mandatory minimum of life imprisonment on Count 5", *Booker* cannot be an extraordinary and compelling reason for release. In arguing that the district court abused its discretion, the government misrepresents the district court's holding – and then cites out of circuit opinions to support a position contrary to this Court's authority.

First, the government summarizes the district court's conclusion on *Booker* as follows:

> The court concluded that, after *Booker*, "Johnson would not have been sentenced to life."

Govt. 43. In fact, the government has omitted the vast majority of the district court's sentence, in which the Court lays out a thorough assessment of the mandatory sentence and relevant authorities:

> But notwithstanding the existing statutory mandatory minimum for Count 5, Judge Lee's letter and the comments from the jury foreman makes clear that but for the sentencing and verdict obligations then imposed on them, which Congress has specifically permitted the Court to mitigate under 18 U.S.C. § 3582(c)(1)(A), Johnson would not have been sentenced to life.

J.A.704-705. After omitting the district court's consideration, the government continues in the next sentence: "The district court's conclusion cannot be squared with Johnson's unchanged statutory mandatory minimum sentence of life imprisonment on Count 5." Govt. at 43. On the contrary – the district court *explicitly* acknowledged the Count 5 mandatory minimum in its conclusion. Both in discussing *Booker* and throughout its opinion, the district court repeatedly considers both the § 1959(a)(1) mandatory minimum as well as the conduct underlying that Count. The district court also cited *United States v. Gray,* No. CR CCB-95-364, 2021 WL 1856649, at *18-19 (D. Md. May 10, 2021), which specifically discusses § 3582 sentence reductions for defendants convicted of § 1959(a)(1). J.A.698-670. An accurate recounting of the district court's opinion reveals detailed reasoning, steeped in the authorities governing its decision.

Beyond this misstatement of the district court's opinion, the government can only argue that the district court abused its discretion in finding *Booker* to be extraordinary and compelling by citing other circuits – circuits which take the opposite position about intervening law that this Court has taken in *United States v. McCoy*.

First, the government cites *United States v. Wilson,* 77 F.4th 837 (D.C. Cir. 2023), *cert. denied*, 144 S. Ct. 1111 (2024) for the proposition, originally set by the D.C. Circuit in *United States v. Jenkins*, 50 F.4th 1185, 1198 (D.C. Cir. 2022), that

in the D.C. Circuit, nonretroactive intervening case law cannot make an extraordinary and compelling reason for a sentence reduction. Govt. at 42. The government neglects to mention that in *Jenkins*, the court explicitly acknowledges the circuit split on this issue, including that this Court in *McCoy* has found nonretroactive intervening law to be an extraordinary and compelling reason for § 3582(c) relief. *Jenkins*, 50 F.4th at 1198.

Similarly, the government cites to *United States v. Hunter,* 12 F.4th 555 (6th Cir. 2021), which relies on the "non-retroactivity doctrine" in finding that nonretroactive changes in the law cannot be an extraordinary and compelling reason for a sentence reduction. The government cited *Hunter* in its opposition to Mr. Johnson's Motion (J.A.572), and the district court discussed that argument in detail in its opinion. J.A.701. *Hunter* reflects the Sixth Circuit's holding, contrary to this Court's decision in *McCoy*, that nonretroactive intervening changes in law cannot be extraordinary and compelling reasons for § 3582(c) relief.

*Wilson* and *Hunter* cannot advance the government's argument because they reflect other circuits' case law that contradicts this Court's binding authority.

Finally, the government fails to acknowledge that had Mr. Johnson been facing today's sentencing scheme – post-*Booker*, post-Robinson Memo, post First Step Act – he would not have been facing stacked § 924(c) sentences or mandatory life guidelines on the remaining counts. It is possible that absent those sentencing

schemes, a different set of plea negotiations might have occurred. At a minimum, it is quite likely that Mr. Johnson would receive a different sentence if he were convicted today – a fact that the court is allowed to consider under § 3582(c).

E.    The Government Cannot Cite to any Authority that the Court abused its discretion in finding Mr. Johnson's Youth to be extraordinary and compelling.

Both this Court in *McCoy* and the Supreme Court in multiple cases have explicitly acknowledged the mitigating impact of youth at the time of the offense conduct. After reviewing an extensive body of authority, the district court found that "Johnson's age at the time his offense conduct began, continuing through his arrest, weighs in favor of relief." J.A.719.

The principle that the Supreme Court followed in *Concepcion* – that courts need not ignore intervening facts – also applies to youth: courts need not ignore developments in the scientific understanding of brain development. Just as the Court ruled that "a district court adjudicating a motion under the First Step may consider other intervening changes of law (such as changes to the Sentencing Guidelines) or changes of fact (such as behavior in prison)", courts may also consider changes in scientific understanding. *Concepcion*, 597 U.S. at 486. Specifically, they may consider, as the district court found in *United States v. McCoy*, "an ever-growing body of research in developmental psychology and neuroscience." No. 2:03-er-197, 2020 WL 2738225, at *7 (E.D. Va. May 26, 2020), *aff'd*, 981 F.3d 271 (4th Cir.

2020). In the instant case, the district court's opinion discussed a vast body of authority from this Court and the Supreme Court on consideration of youth in the § 3582 and other contexts. J.A.699-701.

Ignoring this body of authority, the government recites statistics about age at sentencing without placing them in the context of this Court's authority. In an effort to minimize the importance of youth – a factor recognized by this court in *McCoy* – the government cites to a Sixth Circuit case, *United States v. McCall*, 56 F.4th 1048, 1065 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 2506 (2023). In *McCall*, the Court does not discuss youth or age as an extraordinary and compelling circumstance; the language quoted by the government ("ordinary happenings 'cannot supply an extraordinary and compelling reason to reduce a lawful sentence'"[5]) is referencing the nonretroactivity doctrine, – again, a doctrine this Court has rejected.

The district court's consideration of Mr. Johnson's youth as an extraordinary and compelling reason was explicitly in line with precedent from this Court and the Supreme Court.

---

[5] The *McCall* court stated: "The nonretroactivity of judicial precedent like Havis is the rule, not the exception. That a defendant might receive a different sentence today than he received years ago represents the routine business of our legal system. These ordinary happenings "cannot supply an extraordinary and compelling reason to reduce a lawful sentence whose term Congress enacted, and the President signed, into law." *McCall*, 56 F.4th at 1065 (emphasis added).

The district court's true holding on extraordinary and compelling reasons was that the "totality of extraordinary and compelling reasons" "warrant a sentence reduction and a concomitant consideration of the 3553(a) factors." J.A.715. After a lengthy analysis, the district court found that four of Mr. Johnson's arguments weighed in favor of relief, a fifth warranted consideration, and a sixth amounted to an extraordinary and compelling reason to reduce his 924(c) sentences. Mr. Johnson is a changed man – demonstrated by his consistently extraordinary rehabilitation. Likewise, the law has changed in many ways since his 1998 convictions. In addition, Mr. Johnson was in his early twenties at the time of the conduct in this case – conduct that followed a childhood dominated by tragedy and trauma.  Finally, several of the coconspirators in this case have been free for years because of unwarranted disparities in the sentences in this case. The government does not take on the district court's conclusion on the totality of the factors – because there is no credible argument that the sum of the facts are not extraordinary and compelling. In fact, Courts have consistently rejected the type of "divide-and-conquer analysis" that is necessary to the government's argument since, when taken together, insufficient factors may coalesce to satisfy a threshold. *United States v. Frazer*, 98 F.4th 102, 110 (4th Cir. 2024) (rejecting a "divide-and-conquer analysis" when evaluating the

totality of factors when determining whether an officer held a reasonable suspicion); *see also United States v. Arvizu*, 534 U.S. 266, 274 (2002) ("The court's evaluation and rejection of seven of the listed factors in isolation from each other does not consider the 'totality of the circumstances,' as our cases have understood that phrase.").

Congress acknowledges that district courts will be weighing multiple factors in assessing whether, combined, there are "extraordinary and compelling reasons" for a sentence reduction. For example, in prescribing the Sentencing Commission's responsibilities regarding § 3582, Congress was clear that "[r]ehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t) (emphasis added). It is clear from the statutory language that Congress expected courts to assess extraordinary and compelling reasons as a combination of factors, rather than a single factor "alone".

This Court, when describing "what amounts to 'extraordinary and compelling reasons,' [] ha[s] pointed to an array of factors . . . . [T]he inquiry is multifaceted and must take into account the totality of the relevant circumstances." *United States v. Hargrove,* 30 F.4th 189, 198 (4th Cir. 2022); *see also United States v. Davis*, 99 F.4th 647, 655 (4th Cir. 2024) (affirming the district court's ruling which assessed the totality of factors when granting a sentence reduction).

Here, the district court followed precedent and considered six factors Mr. Johnson proffered as relevant in its "extraordinary and compelling" totality of the circumstances assessment as required under *Hargrove*.

Moreover, the government's analysis of the statutory procedure of § 3582(c) is also flawed. This misunderstanding of the law is exemplified in their analysis of rehabilitation. The district court found that:

> In summary, Johnson's efforts at rehabilitation have been exceptional, particularly given so much of his rehabilitative activities occurred before passage of the First Step Act when there were no significant prospects for release and it appeared that he would serve his life sentences without reduction, reflecting that his motivations for rehabilitations are by all indications sincere.

J.A.698. The government neither concedes nor contests the extent of Mr. Johnson's rehabilitation. However, the government misstates the law – implying that the Court must find an extraordinary and compelling reason on another basis before weighing rehabilitation. Govt. at 56. ("Because none of Johnson's other arguments established extraordinary and compelling reasons, however, the district court could not properly have granted his motion based on his rehabilitation alone.").

The government's position ignores the law in this district, which is that th analysis of an "extraordinary and compelling reason" is a "multi-faceted inquiry" considering the "totality of the circumstances." *See Hargrove,* 30 F.4th at 197–98 ("when the Sentencing Commission and the BOP have considered what amounts to 'extraordinary and compelling reasons,' they have pointed to an array of factors …

we do conclude that the inquiry is multifaceted and must take into account the totality of the relevant circumstances."). Thus, while the district court did find multiple extraordinary and compelling reasons to reduce Mr. Johnson's sentence, it need not have: the district court could have found that no one factor was "extraordinary and compelling" when considered alone but that, taken together, the circumstances together did meet that standard.

The government's statement of the law nullifies any effect of rehabilitation on extraordinary and compelling reasons by suggesting that the district court is required to find an extraordinary and compelling reason before it may consider rehabilitation. If this were true, rehabilitation would be superfluous to the extraordinary and compelling reason requirement and would exclusively fall into consideration of the § 3553(a) factors. This interpretation explicitly contradicts this Court's precedent and Congress's statutory instructions to the Sentencing Commission.

## CONCLUSION

For all of the foregoing reasons, and those stated in the district court's written order of August 8, 2022, Mr. Johnson respectfully requests that this Court affirm the district court's decision granting compassionate release under the discretionary authority granted to it under 18 U.S.C. § 3582(c)(1)(A).

Respectfully submitted,

GEREMY C. KAMENS
Federal Public Defender
for the Eastern District of Virginia

 s/ Nathaniel Wenstrup
Nathaniel Wenstrup
Assistant Federal Public Defender
Counsel for Appellee
1650 King Street, Suite 500
Alexandria, VA 22314
(703) 600-0825
Nate_wenstrup@fd.org

Dated: July 12, 2024

## STATEMENT REGARDING ORAL ARGUMENT

Counsel for appellee believe that the issue in this case is straightforward, and that the district court's detailed written order granting compassionate release was well within its discretion and should be affirmed, but would like the opportunity to present oral argument if the Court determines that argument would be helpful to it in deciding the case.

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This Brief of the Appellant has been prepared using Microsoft Word 365 ProPlus software, Times New Roman font, 14-point proportional type size.

2. EXCLUSIVE of the table of contents, table of authorities, signature block, statement with respect to oral argument, and this certificate of compliance, this brief contains no more than 13,000 words, specifically 7,881 words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.  If the Court so requests, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

<table>
<tr><td>    July 12, 2024    </td><td>    s/   Nathaniel Wenstrup    </td></tr>
<tr><td>Date</td><td>Nathaniel Wenstrup<br>Assistant Federal Public Defender</td></tr>
</table>