IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 23-6896

———————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

v.

SHAHEEM JOHNSON,

*Defendant-Appellee*.

———————————

Appeal from the United States District Court
for the Eastern District of Virginia
at Alexandria
*The Honorable Anthony J. Trenga, District Judge*

———————————

REPLY BRIEF OF THE UNITED STATES

———————————

Jessica D. Aber                     Jacqueline R. Bechara
United States Attorney          Assistant United States Attorney
                                            2100 Jamieson Avenue
                                            Alexandria, Virginia 22314
                                            (703) 299-3700

*Attorneys for the United States of America*

# Table of Contents

Page

Table of Authorities .............................................................................. ii

Statement of Jurisdiction......................................................................1

Argument................................................................................................2

The district court abused its discretion in finding extraordinary and
compelling reasons for a sentence reduction...................................2

A. The district court abused its discretion by granting relief based
on the purported sentence disparities between Johnson and his
cooperating coconspirators....................................................................4

B. The district court abused its discretion by granting relief based
on changes in law and policy that do not affect the sentence
Johnson will actually serve. ..................................................................8

1. Johnson's § 924(c) sentences are not extraordinary and
compelling given the mandatory life sentence on Count 5. .........15

2. The advisory nature of the Guidelines after *Booker* is not
extraordinary and compelling because Johnson would still
face a statutory mandatory life sentence on Count 5....................18

C. Johnson's remaining claims do not warrant relief. ............................23

Conclusion ............................................................................................28

Certificate of Compliance .....................................................................29

i

**Table of Authorities**

**Cases**

*Alvarez v. Lynch*, 828 F.3d 288 (4th Cir. 2016)....................................................4

*Concepcion v. United States*, 597 U.S. 481 (2022) ......................... 12, 13

*Harris v. Warden*, 425 F.3d 386 (7th Cir. 2005) ....................................20

*Lopez v. United States*, Cr. No. 97-1117,
    2016 WL 4766477 (D. Haw. Sept. 12, 2016)................................12

*Pepper v. United States*, 562 U.S. 476 (2011) ........................................5

*Stokes v. Stirling*, 64 F.4th 131 (4th Cir. 2023) ................................4, 5

*United States v. Arvizu*, 543 U.S. 266 (2002) .......................................26

*United States v. Booker*, 543 U.S. 220 (2005).......................................2

*United States v. Brown*, 78 F.4th 122 (4th Cir. 2023) ...........................13

*United States v. Bryant*, 996 F.3d 1243 (11th Cir. 2021) ........................12

*United States v. Butts*, No. 21-6308,
    2021 WL 3929349 (4th Cir. Sept. 2, 2021) (per curiam)...........................27

*United States v. Canales-Ramos*, 19 F.4th 561 (1st Cir. 2021).............................10

*United States v. Chavez*, 894 F.3d 593 (4th Cir. 2018) .........................18

*United States v. Curtis*, No. 3-533,
    2020 WL 1935543 (D.D.C. Apr. 22, 2020)....................................11

*United States v. Davis*, 99 F.4th 647 (4th Cir. 2024)........................... 14, 21, 26, 27

*United States v. Ferebe*, No. CCB-96-0401,
    2023 WL 6809707 (D. Md. Oct. 16, 2023).................................10

*United States v. Ferguson*, 55 F.4th 262 (4th Cir. 2022)..........................1

*United States v. Fernandez*, 104 F.4th 420 (2d Cir. 2024)........................... 7, 8, 10

*United States v. Fisher*, 493 F. Supp. 3d 231 (S.D.N.Y. 2020)..............................11

*United States v. Frazer*, 98 F.4th 102 (4th Cir. 2024) ..............................26

*United States v. Freitekh*, --- F.4th ---,
    2024 WL 4018178 (4th Cir. Sept. 3, 2024)....................................6

*United States v. Gray*, No. CCB-95-364,
2021 WL 1856649 (D. Md. May 10, 2021) ........................................ 11, 21

*United States v. Hasan*, No. 2:10-cr-56,
2022 WL 1125391 (E.D. Va. Mar. 23, 2022) ...............................................18

*United States v. Hope*, No. 90-cr-6108,
2020 WL 2477523 (S.D. Fla. Apr. 10, 2020) ..............................................12

*United States v. Hunter*, 12 F.4th 555 (6th Cir. 2021) .................................... passim

*United States v. Huskey*, 90 F.4th 651 (4th Cir. 2024) .................................... 17, 20

*United States v. Jeffery*, 631 F.3d 669 (4th Cir. 2011) ......................................5

*United States v. Jenkins*, 50 F.4th 1185 (D.C. Cir. 2022) ...............................9, 10

*United States v. Johnson*, 219 F.3d 349 (4th Cir. 2000) ........................................2

*United States v. McCall*, 56 F.4th 1048 (6th Cir. 2022) (en banc) ........................10

*United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020) .................................. passim

*United States v. Melvin*, No. 23-6011,
2023 WL 5974872 (4th Cir. Sept. 14, 2023) (per curiam) ......................6, 22

*United States v. Milan*, No. 91-cr-685,
2020 WL 1674058 (S.D.N.Y. Apr. 6, 2020) ................................................11

*United States v. Moody*, --- F.4th ---,
2024 WL 3881520 (4th Cir. Aug. 21, 2024) .................................................5

*United States v. Osman*, No. 23-6544,
2024 WL 3633573 (4th Cir. Aug. 2, 2024) (per curiam) ..............................4

*United States v. Peoples*, 41 F.4th 837 (7th Cir. 2022) ...................................25

*United States v. Perez-Pena*, 453 F.3d 236 (4th Cir. 2006) ....................................5

*United States v. Rios*, No. 3:94-cr-112,
2020 WL 7246440 (D. Conn. Dec. 8, 2020) ................................................11

*United States v. Robinson*, 404 F.3d 850 (4th Cir. 2005) ................................ 10, 18

*United States v. Spencer*, No. 21-6538,
2021 WL 5230800 (4th Cir. Nov. 10, 2021) (per curiam) ..........................27

*United States v. Stoddard*, No. 1:14-cr-76,
2021 WL 2379568 (E.D. Va. June 9, 2021) ............................................ 16, 17

*United States v. Susi*, 674 F.3d 278 (4th Cir. 2012) .............................................5, 6

*United States v. Tidwell*, 476 F. Supp. 66 (E.D. Pa. 2020)......................................11

*United States v. West*, 70 F.4th 341 (6th Cir. 2023) ................................................25

*United States v. Williams*, No. 3:04-cr-95,
  2020 WL 1751545 (N.D. Fla. Apr. 1, 2020) .................................................11

*United States v. Wilson*, 77 F.4th 837 (D.C. Cir. 2023) .........................................21

## Statutes

First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194........................... 12, 13

18 U.S.C. § 924(c) ..................................................................................... passim

18 U.S.C. § 1959(a)(1).................................................................................. passim

18 U.S.C. § 3553(a) .........................................................................................4

18 U.S.C. § 3559(c)(1)................................................................................ 16, 17

18 U.S.C. § 3582(c)(1)(A) .......................................................................... passim

18 U.S.C. § 3742 ..............................................................................................1

21 U.S.C. § 841 ...............................................................................................13

28 U.S.C. § 994(t) ...........................................................................................25

28 U.S.C. § 1291 ..............................................................................................1

28 U.S.C. § 2255 .............................................................................................12

## Other Authorities

Bureau of Justice Statistics,
  Compendium of Federal Justice Statistics, 1999 (2001)...............................24

Memorandum from James K. Robinson, Assistant Attorney General,
  to All United States Attorneys, First Assistant United States
  Attorneys, and Criminal Division Section Chiefs and
  Office Directors (Aug. 24, 1999)........................................................ passim

U.S.S.G. § 1B1.13 .................................................................................... 3, 12, 15

U.S.S.G. § 4B1.1 .............................................................................................14

**Statement of Jurisdiction**

The government asserted that the Court has jurisdiction under 28 U.S.C. § 1291 over this appeal from the district court's order granting in part Shaheem Johnson's motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). Gov't. Br. 1.  Johnson notes that this Court has "stated that its jurisdiction over an appeal of a § 3582(c) sentence reduction proceeding arises under either 18 U.S.C. § 3742" or under § 1291.  Def. Br. 1 (citations omitted).  In *United States v. Ferguson*, 55 F.4th 262, 266 (4th Cir. 2022), the Court held that "§ 1291, which gives [the Court] broad authority to hear 'appeals from all final decisions of the district courts of the United States,' is a better fit for compassionate release motions than § 3742(a), which permits a criminal defendant to appeal 'an otherwise final sentence' in one of four statutorily enumerated circumstances." Although *Ferguson* involved an appeal from the denial of a motion for compassionate release, the Court concluded that "[o]nly § 1291 affords [the Court] the power" to "review *both* grants and denials of compassionate release." *Id.* at 267 (emphasis added).  Accordingly, § 1291 is the source of the Court's jurisdiction over this appeal.

# Argument

## The district court abused its discretion in finding extraordinary and compelling reasons for a sentence reduction.

Shaheem Johnson and his twin brother "organized a large-scale drug operation" and "were involved in five murders related to their conspiracy." *United States v. Johnson*, 219 F.3d 349, 352 (4th Cir. 2000). A jury found Johnson guilty of operating a continuing criminal enterprise, manslaughter of Bernard Franklin using a firearm, murder of Richard Villa in aid of racketeering, three additional firearm offenses under 18 U.S.C. § 924(c), and various drug and money-laundering offenses. The district court also attributed the murders of Antonio Stevens, Shawn Thomas, and Tracy Morgan to Johnson as acts in furtherance of the drug conspiracy at sentencing. The government sought the death sentence for the murder of Villa, but the jury showed mercy and recommended a life sentence. In 1999, the district court sentenced Johnson to two terms of life plus 790 months (about 65 years) in prison. This Court affirmed Johnson's convictions on direct appeal. *Johnson*, 219 F.3d at 359.

In 2023, the district court granted in part Johnson's motion under 18 U.S.C. § 3582(c)(1)(A) and reduced his sentence to 35 years in prison. The court found that "extraordinary and compelling" reasons exist based on Johnson's rehabilitation, his age at the time of his offenses, his sentencing before *United States v. Booker*, 543 U.S. 220 (2005), the amended penalties for multiple § 924(c)

violations, an intervening charging policy for § 924(c) offenses, and the purported disparity between Johnson's sentence and the sentences of coconspirators Damein Piranti, Rickey Piranti, and Eldon Brown.

The opening brief established that the district court abused its discretion in finding extraordinary and compelling reasons for a sentence reduction. The intervening changes in law and policy are not extraordinary and compelling in this case because they do not affect the sentence Johnson will actually serve. And there is nothing extraordinary and compelling about the fact that Johnson, who went to trial, received a higher sentence than the Pirantis and Brown, who pleaded guilty, cooperated, and received the benefit of cooperation at sentencing. All that remain are Johnson's age at the time of his offenses and his rehabilitation, which, without more, are not extraordinary and compelling.

Johnson characterizes this appeal as a simple disagreement with the district court's assessment and emphasizes the district court's broad discretion in evaluating motions for compassionate release. Def. Br. 14–15, 17–18. To be sure, before the Sentencing Commission amended U.S.S.G. § 1B1.3, § 3582(c)(1)(A) vested "courts with independent discretion to determine whether 'extraordinary and compelling reasons' exist." *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020). That discretion is not boundless, however, and can be abused. *See, e.g.*, *United States v. Osman*, No. 23-6544, 2024 WL 3633573, at *4 (4th Cir.

Aug. 2, 2024) (per curiam) (holding that the district court abused its discretion in granting the defendant's motion for compassionate release because "the court impermissibly collapsed the threshold 'extraordinary and compelling reasons' inquiry into its consideration of the 18 U.S.C. § 3553(a) factors"). Because Johnson failed to "meet the heightened standard of 'extraordinary and compelling reasons'" for relief, *McCoy*, 981 F.3d at 287, the Court should reverse.

A. **The district court abused its discretion by granting relief based on the purported sentence disparities between Johnson and his cooperating coconspirators.**

The government detailed how the district court abused its discretion by concluding that extraordinary and compelling reasons exist based on the purported sentence disparities between Johnson, who went to trial, and Damein Piranti, Rickey Piranti, and Eldon Brown, who pleaded guilty and cooperated. Gov't Br. 45–54. On appeal, Johnson offers no argument defending this aspect of the district court's ruling. *See generally* Def. Br. 14–34. "It is well-established that [a] party's failure to raise or discuss an issue in [its appellate] brief is to be deemed an abandonment of that issue." *Stokes v. Stirling*, 64 F.4th 131, 137 (4th Cir. 2023) (internal quotation marks omitted). Johnson's failure to provide any argument regarding the purported coconspirator sentence disparities constitutes forfeiture. *See*, *e.g.*, *Alvarez v. Lynch*, 828 F.3d 288, 295 (4th Cir. 2016) (observing that "an outright failure to join in the adversarial process would ordinarily result in

4

waiver"); *but see Stokes*, 64 F.4th at 138–39 (holding that the appellee's failure to raise an argument on appeal constituted forfeiture, not waiver). Accordingly, the Court should reverse based on the conceded error in the district court's finding that the coconspirator sentence disparities were extraordinary and compelling.

Sentence disparities between defendants who go to trial and defendants who plead guilty and cooperate are an ordinary feature of the trial and sentencing process and, therefore, not unwarranted. *See, e.g.*, *Pepper v. United States*, 562 U.S. 476, 503 (2011); *United States v. Susi*, 674 F.3d 278, 288 (4th Cir. 2012); *United States v. Jeffery*, 631 F.3d 669, 679 (4th Cir. 2011); *United States v. Perez-Pena*, 453 F.3d 236, 243–44 (4th Cir. 2006). The district court's reasoning that the disparity between Johnson's sentence and the Pirantis' sentences is unwarranted because Johnson "was never specifically charged" with the deaths of Antonio Stevens, Shawn Thomas, and Tracy Morgan, JA707, conflicts with the sentencing court's determination that these murders were attributable to Johnson based on the jury's guilty verdict on Count 1, JA340. *See* Gov't Br. 47–49; *see also United States v. Moody*, --- F.4th ---, 2024 WL 3881520, at *6 (4th Cir. Aug. 21, 2024) (reasoning that, "given the sentencing court's express [drug quantity] finding, the district court's hands were tied for purposes of [the defendant's] compassionate release motion"). Further, the district court's finding of an unwarranted sentence disparity relative to Brown depended on unsupported

speculation that Brown was not charged with Villa's murder, improper second-guessing of the government's assessment of the value of Brown's cooperation, disregard of the law of the case regarding Johnson's culpability for the murder of Villa, and rejection of basic principles of aiding-and-abetting liability. Gov't. Br. 49–54.

The Pirantis and Brown, who timely accepted responsibility and assisted the government, simply were not similarly situated to Johnson, who did neither. *See, e.g.*, *Susi*, 674 F.3d at 288 n.3 (affirming the district court's reasoning that the defendant "should be compared to those defendants who were not cooperating and not assisting the United States," not "to the conspirators who pled guilty"); *see also United States v. Freitekh*, --- F.4th ---, 2024 WL 4018178, at *20 (4th Cir. Sept. 3, 2024) (affirming the district court's determination that the defendant's "argument concerning the need to avoid unwarranted sentence disparities" was "unpersuasive" because the cited cases "were resolved through plea negotiations rather than proceeding to trial, a factor that distinguishe[d] them from [the defendant's] case"). Johnson no longer argues otherwise. *Cf.* Def. Br. 14–34.

Accordingly, the sentence disparities resulting from the Pirantis' and Brown's cooperation were not an extraordinary and compelling reason to reduce Johnson's sentence. *See, e.g.*, *United States v. Melvin*, No. 23-6011, 2023 WL 5974872, at *2 (4th Cir. Sept. 14, 2023) (per curiam) (holding that the defendant's

"criminal history, role in the offense, and late acceptance of responsibility" could "support a large disparity" relative to his codefendants, "and the sentencing court's finding that [the defendant] was the driving force behind the conspiracy undermine[d his] contention that any disparity was compelling or extraordinary"); *see also United States v. Hunter*, 12 F.4th 555, 572 (6th Cir. 2021) ("There is nothing 'extraordinary' or 'compelling' about a sentence disparity that results from a co-defendant's decision to plead guilty and assist the government.").

The Second Circuit recently reversed an order granting compassionate release based, in part, on the same error. In *United States v. Fernandez*, 104 F.4th 420 (2d Cir. 2024), the defendant was convicted at trial and received two life sentences for a murder-for-hire conspiracy resulting in two deaths and the use of a firearm to commit two murders during and in relation to the same conspiracy. *See id.* at 424–25. His codefendants, who "were also charged but pleaded guilty," *id.* at 424, received sentences of between two and thirty years, *id.* at 425. Fernandez later moved for compassionate release, and the district court accepted the claim that "the considerably lower sentences imposed on" Fernandez's codefendants constituted extraordinary and compelling reasons. *Id.* at 425. The court reduced Fernandez's sentence to time served. *Id.* at 426.

The Second Circuit disagreed, holding that "Fernandez's sentencing disparity [was] not an 'extraordinary and compelling reason[]' to reduce his

sentence under the plain meaning of the statute." *Id.* at 428. "It is not 'extraordinary' (indeed, it should be expected) that a defendant who proceeds to trial and is convicted receives a longer sentence than his co-defendants who plead guilty to different crimes, accept responsibility, and assist the government by cooperating." *Id.* And the sentence disparity was not "a 'compelling' reason to reduce [the] sentence" given that sentence disparities between coconspirators "can exist for valid reasons, such as . . . the offenses of conviction, or one coconspirator's decision to plead guilty and cooperate with the government." *Id.* (internal quotation marks omitted). Accordingly, there was "nothing extraordinary or compelling about a sentence disparity that results from a co-defendant's decision to plead guilty and assist the government." *Id.* at 429 (quoting *Hunter*, 12 F.4th at 572).

Likewise, here, the district court abused its discretion in finding that the sentence disparities resulting from the Pirantis' and Brown's cooperation constituted extraordinary and compelling reasons to reduce Johnson's sentence. Therefore, the Court should reverse.

### B. The district court abused its discretion by granting relief based on changes in law and policy that do not affect the sentence Johnson will actually serve.

The opening brief explained that the district court abused its discretion by granting relief based on Johnson's § 924(c) sentences on Counts 4, 14, 16, and 17.

Gov't Br. 33–45. Unlike the sentences of the defendants in *McCoy*, Johnson's sentence would not "be dramatically shorter" as a result of the First Step Act's amended penalties for multiple § 924(c) convictions. *McCoy*, 981 F.3d at 274. Instead, if sentenced today, he would still face a mandatory life sentence for his conviction of murder in aid of racketeering in Count 5. *See* 18 U.S.C. § 1959(a)(1). For the same reason, the Robinson Memorandum, which instructed federal prosecutors in all future cases to base each § 924(c) count in an indictment on a separate predicate offense, has no practical effect on the life sentence Johnson will serve. *See* Memorandum from James K. Robinson, Assistant Attorney General, to All United States Attorneys, First Assistant United States Attorneys, and Criminal Division Section Chiefs and Office Directors (Aug. 24, 1999) ("Robinson Memorandum"). Even if Johnson would face only two § 924(c) convictions today, he would still face a mandatory life sentence.

Johnson argues at length that nothing restricts a district court from reducing a sentence under § 3582(c)(1)(A) based on the statute of conviction. Def. Br. 18–21. The government agrees with this unremarkable proposition, which is beside the point. The plain language of the statute requires a defendant to establish "extraordinary and compelling reasons" for a sentence reduction. *See* § 3582(c)(1)(A)(i). "An 'extraordinary' reason must be 'most unusual, far from common, and having little or no precedent.'" *United States v. Jenkins*, 50 F.4th

1185, 1197 (D.C. Cir. 2022) (quoting *Hunter*, 12 F.4th at 562); *see also*
*Fernandez*, 104 F.4th at 428 (same); *United States v. McCall*, 56 F.4th 1048, 1055
(6th Cir. 2022) (en banc) (same), *cert. denied*, 143 S. Ct. 2506 (2023). The
ordinary meaning of "compelling" is "forcing, impelling, driving." *McCall*,
56 F.4th at 1055 (internal quotation marks omitted). So "a 'compelling' reason
must be 'both powerful and convincing.'" *Jenkins*, 50 F.4th at 1197 (quoting
*United States v. Canales-Ramos*, 19 F.4th 561, 567 (1st Cir. 2021)); *see also*
*Fernandez*, 104 F.4th at 428 (same). The problem here is that the district court
granted relief based on intervening changes in law and policy that would have no
effect on the sentence Johnson will actually serve. Therefore, those changes are
neither "extraordinary" nor "compelling" under the plain meaning of
§ 3582(c)(1)(A).

In support of his position, Johnson cites a collection of district court
decisions in which courts reduced life sentences. Def. Br. 20–21. Only *United*
*States v. Ferebe*, No. CCB-96-0401, 2023 WL 6809707 (D. Md. Oct. 16, 2023), is
on point. That court apparently committed the same error as the district court here
by concluding that "the court would no longer be required to impose a mandatory
sentence of life imprisonment" for murder in aid of racketeering under
§ 1959(a)(1) after *Booker*. *Id.* at *3; *cf. United States v. Robinson*, 404 F.3d 850,

862 (4th Cir. 2005) ("*Booker* did nothing to alter the rule that judges cannot depart below a statutorily provided minimum sentence.").

Otherwise, Johnson references cases in which the courts found extraordinary and compelling reasons because the defendants' medical conditions increased their risk of severe illness from COVID-19. *See United States v. Gray*, No. CCB-95-364, 2021 WL 1856649, at *2–3 (D. Md. May 10, 2021); *United States v. Fisher*, 493 F. Supp. 3d 231, 235–36 (S.D.N.Y. 2020). In fact, the government conceded that the defendants had established extraordinary and compelling reasons based on their medical conditions in several of Johnson's cited cases. *See United States v. Rios*, No. 3:94-cr-112, 2020 WL 7246440, at *3 (D. Conn. Dec. 8, 2020); *United States v. Tidwell*, 476 F. Supp. 66, 73 (E.D. Pa. 2020); *United States v. Curtis*, No. 3-533, 2020 WL 1935543, at *3 (D.D.C. Apr. 22, 2020); *United States v. Williams*, No. 3:04-cr-95, 2020 WL 1751545, at *3 & n.12 (N.D. Fla. Apr. 1, 2020). That a defendant serving a life sentence may establish extraordinary and compelling reasons based on his medical conditions in no way supports the contention that intervening changes in law and policy that do not affect the defendant's actual sentence are extraordinary and compelling in this case.

Nor do the other cited cases bolster the district court's decision here. The district court in *United States v. Milan*, No. 91-cr-685, 2020 WL 1674058, at *15

(S.D.N.Y. Apr. 6, 2020), found extraordinary and compelling reasons not based on an intervening change in law but based on the defendant's "extraordinary rehabilitation," "remorse and contrition," "conduct as a model prisoner," "leadership role in the religious community," "dedication to his work with at-risk youth and suicide prevention," "the support of BOP staff" at his facility, and codefendant sentence disparity. Further, the Eleventh Circuit's decision in *United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021) (holding that § 1B1.13 governs "all motions" for compassionate release, such that a district court could "not reduce a sentence under Section 3582(c)(1)(A) unless a reduction would be consistent with 1B1.13"), abrogated the reasoning in *United States v. Hope*, No. 90-cr-6108, 2020 WL 2477523, at *4 (S.D. Fla. Apr. 10, 2020) (finding that the defendant established extraordinary and compelling reasons based on his "serious medical issue," sentence disparity, and rehabilitation). The citation to *Lopez v. United States*, Cr. No. 97-1117, 2016 WL 4766477 (D. Haw. Sept. 12, 2016), an order denying a motion under 28 U.S.C. § 2255, appears to be an error.

Johnson also relies on the Supreme Court's decision in *Concepcion v. United States*, 597 U.S. 481 (2022), which involved a motion for a sentence reduction under § 404(b) of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5222, based on retroactive application of the Fair Sentencing Act's revised penalties for crack cocaine offenses. Def. Br. 22–24. But that case

reinforces the critical defect in Johnson's claims here. Section 404(b) of the First Step Act permits "[a] court that imposed a sentence for a covered offense" to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." § 404(b), 132 Stat. at 5222. In *Concepcion*, the government conceded that the defendant was eligible for a sentence reduction in that "he was serving a sentence for a 'covered offense' because § 2 of the Fair Sentencing Act 'modified' the statutory penalties for his conviction under 21 U.S.C. § 841(a)(1)." 597 U.S. at 488. In other words, the defendant was eligible for a sentence reduction because he would face a lower penalty range if sentenced today. *See id.* (summarizing the defendant's argument that "retroactive application of the Fair Sentencing Act lowered his Guidelines range from 262 to 327 months to 188 to 235 months"). The district court had discretion to consider intervening changes of law or fact "in deciding whether, and to what extent, to modify a sentence," *id.* at 486–87, only because the defendant was eligible for a sentence reduction in the first place.

This Court's compassionate-release decisions addressing intervening changes of law reflect the same animating principles. In *McCoy,* the Court held that the defendants established extraordinary and compelling reasons because, after the First Step Act, "the defendants' sentences would be dramatically shorter—in most cases, by 30 years—than the ones they received." 981 F.3d at 274. And in

*United States v. Brown*, 78 F.4th 122, 131 (4th Cir. 2023), the Court concluded that the defendant had established extraordinary and compelling reasons because, "[i]f sentenced today, [he] would have been subject to a ten-(rather than thirty-) year mandatory minimum for his two § 924(c) convictions." Similarly, in *United States v. Davis*, 99 F.4th 647, 657 (4th Cir. 2024), the Court held that the district court should have considered the defendant's claim that, "if sentenced today, his term of imprisonment would be substantially shorter" because he would no longer qualify as a career offender under U.S.S.G. § 4B1.1.

By contrast, if Johnson were sentenced today, he would face the same mandatory minimum sentence of life imprisonment on Count 5. *See* Def. Br. 18 n.3 (acknowledging that the "penalty scheme" under § 1959(a)(1) "remains unchanged today"). Johnson would not serve his § 924(c) sentences on Counts 4, 14, 16, and 17 until after the expiration of his life sentences on Counts 2 and 5. Consequently, the First Step Act's amended penalties for multiple § 924(c) offenses, the revised charging policy for § 924(c) offenses, and the advisory nature of the Sentencing Guidelines after *Booker* have no practical effect on the sentence Johnson would face today. *See* Gov't Br. 33–45. Therefore, the district court abused its discretion in finding that these intervening changes constitute extraordinary and compelling reasons to reduce Johnson's sentence.

### 1. Johnson's § 924(c) sentences are not extraordinary and compelling given the mandatory life sentence on Count 5.

As set forth in the opening brief, the district court abused its discretion by granting relief based on Johnson's § 924(c) sentences on Counts 4, 14, 16, and 17. Gov't Br. 33–41. Johnson contends that the government lacks authority for the proposition that the intervening changes in law and policy are not extraordinary and compelling in this case because those changes have no effect on the mandatory life sentence Johnson would face today. Def. Br. 22, 24, 26. To the contrary, this limitation flows directly from the statutory text, which requires a defendant to show "extraordinary and compelling reasons" for a sentence reduction. *See McCoy*, 981 F.3d at 287 ("Under § 3582(c)(1)(A)(i), . . . only those defendants who can meet the heightened standard of 'extraordinary and compelling reasons' may obtain relief."); *id.* at 288 ("The district courts in these cases appropriately exercised the discretion conferred by Congress and *cabined by the statutory requirements* of § 3582(c)(1)(A)." (emphasis added)).

Johnson does not contest the ordinary meanings of "extraordinary" and "compelling" applied by other courts. *See* Gov't Br. 31. Nor does Johnson contest that his § 924(c) sentences have no practical effect in light of his life sentences.

*See* Gov't Br. 33–34.[1]  And Johnson offers no defense of the district court's

application of the Robinson Memorandum, which concluded without record

support that Counts 4 and 14 share a predicate offense.  *See* Gov't Br. 39–41.

The only authority Johnson submits to support the finding that the amended

§ 924(c) penalties and the Robinson Memorandum are extraordinary and

compelling is the district court's decision in *United States v. Stoddard*,

No. 1:14-cr-76, 2021 WL 2379568 (E.D. Va. June 9, 2021).  *See* Def. Br. 24–25.

Johnson asserts that, because Stoddard conceded in his motion for compassionate

release that the First Step Act would not have changed his sentence because he had

a prior conviction under § 924(c) that had already become final, *Stoddard* supports

the proposition that an "intervening law that would not have changed the

defendant's sentence" still constitutes an extraordinary and compelling reason for a

sentence reduction.  Def. Br. 25.  But Stoddard was pro se, and the district court

did not accept that mistaken concession in ruling on his motion.  *See Stoddard*,

2021 WL 2379568, at *2 n.5 ("The PSR indicates that none of Defendant's prior

convictions is an § 924(c) conviction.").  Accordingly, the court found

extraordinary and compelling reasons because "if Defendant were sentenced today,

---

[1] Johnson also does not defend the district court's assertion that the unusually long sentence provision of the amended policy statement for compassionate-release motions, U.S.S.G. § 1B1.13(b)(6), "is particularly relevant."  JA710 n.37.

Defendant would benefit from the First Step Act's changes to the sentencing regime in § 924(c)(1)(C)." *Id.* at *3. "Thus, if sentenced today for the same conduct," Stoddard "would receive time served on these three § 924(c) counts and a life sentence for" the violations of 18 U.S.C. § 3559(c)(1), "which still carry a mandatory term of life imprisonment." *Id.*

Johnson also incorrectly claims that, in *Stoddard*, "[t]he district court was silent as to whether it found extraordinary and compelling reasons to reduce the life sentence." Def. Br. 25. To the contrary, the district court plainly stated that there was "no persuasive reason to reduce Defendant's term of imprisonment below life imprisonment." *Stoddard*, 2021 WL 2379568, at *1. The court reasoned that "[n]othing about COVID-19 warrants this further reduction." *Id.* "Nor [did] the mere length of Defendant's life sentence under § 3559(c)(1) warrant further reduction in [his] sentence, for § 3559(c)(1)'s mandatory minimum life sentence . . . still remains in effect today and was not amended by the First Step Act or *McCoy*." *Id.* The court reiterated that "nothing about Defendant's life sentence for Counts 2, 4, and 6 is extraordinary or compelling in the way contemplated by *McCoy*. Nor is there any separate 'extraordinary and compelling' reason here on this record to set aside Defendant's still valid mandatory minimum sentence under § 3559(c)(1)." *Id.* at *4 n.10. Thus, *Stoddard* confirms that the amended § 924(c) penalties and the Robinson Memorandum provided no reason,

let alone extraordinary and compelling reasons, to reduce Johnson's still-applicable mandatory life sentence.

This Court has recognized that, on direct appeal, "a defendant cannot show an impact on substantial rights where a sentencing error involves a term of years sentence on one count" that runs consecutively to a life sentence. *United States v. Huskey*, 90 F.4th 651, 676–77 (4th Cir. 2024). By the same logic, intervening developments that involve only a term of years that runs consecutively to an unaffected life sentence are not extraordinary and compelling reasons for a sentence reduction. *See, e.g.*, *United States v. Hasan*, No. 2:10-cr-56, 2022 WL 1125391, at *6 (E.D. Va. Mar. 23, 2022) ("While it is true that if Defendant were sentenced today, he would likely receive a term of life plus fifty years rather than life plus eighty years, such disparity does not render this case one of the 'most grievous cases' that warrant compassionate release.'" (quoting *McCoy*, 981 F.3d at 287)). Therefore, Johnson's claims fail because they are not extraordinary and compelling under the plain meaning of § 3582(c)(1)(A).

> **2.** **The advisory nature of the Guidelines after *Booker* is not extraordinary and compelling because Johnson would still face a statutory mandatory life sentence on Count 5.**

The opening brief demonstrated that the district court abused its discretion by concluding that the advisory nature of the Guidelines after *Booker* is an extraordinary and compelling reason to reduce Johnson's sentence. Gov't Br. 42–

45.  Even under the advisory Guidelines, the district court would have no

discretion but to sentence Johnson to life imprisonment on Count 5.  *See United

States v. Chavez*, 894 F.3d 593, 609 (4th Cir. 2018) (Section 1959(a)(1) "does not

permit a district court to impose a shorter sentence regardless of mitigating

circumstances.").  That is true regardless of the personal views of the trial judge or

the jury foreman.  *Cf.* Def. Br. 26; *see Robinson*, 404 F.3d at 862 (confirming that,

even after *Booker*, "a district court has *no* discretion to impose a sentence outside

of the statutory range established by Congress for the offense of conviction").

That *Booker* may have expanded the sentencing court's discretion on Johnson's

other counts of conviction is not an "extraordinary" or "compelling" reason to

reduce his life sentence.

Johnson again asserts that the government "argues without authority" that

*Booker* is not an extraordinary and compelling reason in this case because the

sentencing court would have to impose a life sentence for his conviction on Count

5 even under the advisory Guidelines.  Def. Br 26.  As explained *supra*, the

government relies on the plain language of the statute, which requires

"extraordinary and compelling reasons" for a sentence reduction.  *See McCoy*,

981 F.3d at 287 ("Under § 3582(c)(1)(A)(i), . . . only those defendants who can

meet the heightened standard of 'extraordinary and compelling reasons' may

obtain relief.").

Johnson also claims that the government "misrepresents the district court's holding" by omitting the full text of the court's ruling on *Booker*. Def. Br. 26. To be clear, the government provided a detailed, five-page summary of the district court's compassionate-release decision in its statement of the case. *See* Gov't Br. 22–26. That summary included a verbatim recitation of the language Johnson complains is missing. *Compare* Def. Br. 26 *with* Gov't Br. 23. That the government subsequently summarized that ruling in the argument section of its brief is not a misrepresentation.

In any event, the government does not challenge the adequacy of the district court's explanation. *Cf.* Def. Br. 27 (arguing that "[a]n accurate recounting of the district court's opinion reveals detailed reasoning"). Rather, the government maintains that the district court abused its discretion because *Booker* would have no practical effect on the sentence Johnson would receive today. Even under the advisory Guidelines, Congress has provided for a mandatory life sentence for a conviction under § 1959(a)(1). Like the First Step Act's amendments to the penalties for multiple § 924(c) offenses and the Robinson Memorandum, the intervening decision in *Booker* has no practical effect on the sentence Johnson would receive today. *Cf. Huskey*, 90 F.4th at 677 (holding that the defendant could not establish that a plain error affected his substantial rights "where the faultily imposed term of years sentence would be served only after the expiration of a life

sentence"); *see Harris v. Warden*, 425 F.3d 386, 387 (7th Cir. 2005) (reasoning that "'life' and 'life plus x years' come to the same thing").

Johnson asserts that the district court properly relied on *Gray*, in which the district court reduced the defendant's mandatory life sentence under § 1959(a)(1). *See* Def. Br. 27. But the district court in *Gray* found extraordinary and compelling reasons based on the defendant's risk of severe illness from COVID-19. *See* 2021 WL 1856649, at *2–3. *Gray* did not involve a claim of extraordinary and compelling reasons based on an intervening change in law, let alone one that had no practical effect on the defendant's sentence.

Johnson also urges the Court to reject its sister circuits' decisions holding that *Booker* can never be an extraordinary and compelling reason for a sentence reduction under § 3582(c)(1)(A). Def. Br. 28; *see United States v. Wilson*, 77 F.4th 837, 842 (D.C. Cir. 2023), *cert. denied*, No. 23-555, 144 S. Ct. 1111 (2024); *Hunter*, 12 F.4th at 563–65. It is true that this Court has since held that "[n]onretroactive changes in law remain relevant when a court has to decide when and how to modify a sentence." *Davis*, 99 F.4th at 658. But, as asserted in the opening brief, the Court need not resolve this threshold question about the import of *Booker*. Gov't Br. 42. Even if *Booker* could provide a basis for a sentence reduction in other circumstances, *Booker* is not extraordinary and compelling in

this case because it would have no practical effect on the sentence that Johnson would receive today. *See* Gov't. Br. 42–45.

Finally, Johnson faults the government for "fail[ing] to acknowledge that," based on the amended § 924(c) penalties, the Robinson Memorandum, and *Booker*, "a different set of plea negotiations might have occurred" today. Def. Br. 28–29. Of course, a claim that the parties would have successfully negotiated a plea agreement today is materially different in kind than a claim that Johnson would have received a lower sentence today. Indeed, the district court did not find extraordinary and compelling reasons based on the effect of intervening developments on the possibility of a plea agreement. *Cf.* JA697–716. For good reason: this claim is wholly speculative. *See, e.g.*, *Melvin*, 2023 WL 5974872, at *2 (observing that the defendant's sentence-disparity arguments "rely on speculation regarding charging practices and average sentences, but such speculation involves numerous factors, assumptions, and considerations, rendering comparisons and predictions difficult, if not impossible").

Regardless, the record does not support this claim. In fact, Johnson told the jury and the sentencing court that he declined the government's plea offer not because of his sentencing exposure but because he maintained his innocence. *See* JA152 (Johnson telling the jury, "When we got locked up, my brother wanted to take a plea and do the same thing Ricky and Damien was doing. . . . But I wanted

to go to trial. My position was always, okay, I know [Franklin] is dead because of me, and I know that I defended myself. At that time they were saying I killed [Franklin] in order to further my drug enterprise. But I knew that wasn't the case."); JA358–359 (Johnson telling the sentencing court, "The government tried to depict me as a monster and, on top of that, they had the audacity to want me to plead to this. I know you probably don't understand why I didn't just cop out like everyone else and get off like everyone else is likely to do. . . . My only reason [is] that I hold fast to the Constitution and if I didn't do the crime, I refuse to condemn myself, knowing that I'd be lying on myself."). Therefore, Johnson's speculative claim about the potential effect of intervening developments on resolution of the case by guilty plea cannot sustain the district court's finding of extraordinary and compelling reasons based on his § 924(c) sentences and *Booker*.

**C.    Johnson's remaining claims do not warrant relief.**

The district court cited two other extraordinary and compelling reasons for granting a sentence reduction: Johnson's age at the time of his offenses and his rehabilitation. JA697–701. Because the district court abused its discretion in granting relief based on Johnson's stacked § 924(c) sentences, the Robinson Memorandum, *Booker*, and the purported sentence disparities, the two remaining reasons do not "meet the heightened 'extraordinary and compelling' standard," *McCoy*, 981 F.3d at 276 n.1, in this case.

23

Johnson defends the district court's authority to consider his age at the time of his offenses as part of the extraordinary-and-compelling-reasons inquiry. Def. Br. 29–30. But the government has never contested that age is a factor the court can consider. Instead, the government maintains that, in this case, Johnson's age is not an "extraordinary and compelling reason[]" under the plain meaning of the statute. Johnson was not a juvenile when his offense conduct began, and, of course, he matured as the conspiracy progressed. *See* Gov't Br. 55. Although Johnson emphasizes "developments in the scientific understanding of brain development," Def. Br. 29, he does not tie that general proposition to his personal circumstances. *Cf. Hunter*, 12 F.4th at 570 n.7 (reasoning that the district court did not properly rely on an academic article about brain development, which spoke "in terms of averages and [said] nothing about the exact status of [the defendant's] brain when he killed" the victim).

Johnson also complains that the government offered statistics, "without placing them in the context of this Court's authority," Def. Br. 30, showing that, like Johnson, 39.2% of federal defendants convicted of violent offenses from October 1, 1998 to September 30, 1999 were between the ages of 21 and 30 years old. *See* Table 4.5, Bureau of Justice Statistics, Compendium of Federal Justice

Statistics, 1999, at 59 (2001).[2]  But the district court relied on similar, general

statistics in its decision.  *See* JA704 ("In Fiscal Year 2021, the average sentence

nationally for murder was 248 months, or just over 20 years.").  Indeed, this Court

embraced similar statistics in *McCoy*.  *See* 981 F.3d at 285 (citing favorably the

district court's observation that "the defendants' sentences . . . were about twice as

long as federal sentences imposed today for murder").  The government properly

offered this metric to illustrate that Johnson's age at the time of his offenses was

relatively common, not extraordinary and compelling.

Absent these improper considerations, the district court could not have

granted relief based on Johnson's rehabilitation alone.  *See* Gov't Br. 55–56.  That

conclusion follows directly from Congress's express instruction that

"[r]ehabilitation of the defendant alone shall not be considered an extraordinary

and compelling reason."  28 U.S.C. § 994(t).  Indeed, this Court has interpreted

that provision to mean that "successful rehabilitation efforts may [] be considered

as one *among other factors* under § 3582(c)(1)(A)(i)."  *McCoy*, 981 F.3d at 286 n.9

(emphasis added).  Johnson claims that this interpretation "nullifies any effect of

rehabilitation on extraordinary and compelling reasons by suggesting that the

district court is required to find an extraordinary and compelling reason before it

---

[2] Available at https://bjs.ojp.gov/content/pub/pdf/cfjs99.pdf.

may consider rehabilitation." Def. Br. 34. But the government's position "is more limited: rehabilitation 'cannot serve as a stand-alone reason' for compassionate release." *United States v. Peoples*, 41 F.4th 837, 842 (7th Cir. 2022) (quoting *Hunter*, 12 F.4th at 563). Therefore, without reference to the deficient reasons, Johnson's rehabilitation does not warrant relief. *See, e.g.*, *United States v. West*, 70 F.4th 341, 348 (6th Cir. 2023) (reversing grant of compassionate release where, without the improper grounds for relief, the defendant was "left only with rehabilitation as the basis for his compassionate release").

Relying on inapposite cases assessing whether an officer had reasonable suspicion for an investigatory stop under the Fourth Amendment, Johnson claims that the government engages in an impermissible "'divide-and-conquer analysis.'" Def. Br. 31 (citing *United States v. Frazer*, 98 F.4th 102, 110 (4th Cir. 2024); *United States v. Arvizu*, 543 U.S. 266, 274 (2002)). But the district court analyzed each factor in isolation, JA697–715, before restating its conclusions in a summary paragraph, JA715–716. "The district court did not explain how the factors interacted, or how the combination of the factors compounded the reasons for [Johnson's] release." *Hunter*, 12 F.4th at 563 n.3. Nor does Johnson explain how three intervening circumstances with no practical effect on his sentence and an ordinary sentence disparity combine with his age and rehabilitation to constitute "extraordinary and compelling reasons" under the plain language of the statute.

Moreover, this Court has consistently vacated compassionate-release decisions based on discrete errors in the district court's analysis. *See, e.g.*, *Davis*, 99 F.4th at 658–659 (vacating order denying compassionate release because the district court abused its discretion in rejecting as an impermissible collateral attack the defendant's claim that he would no longer qualify as a career offender if sentenced today and in "overlooking" the defendant's rehabilitation evidence);[3] *United States v. Spencer*, No. 21-6538, 2021 WL 5230800, at *1 (4th Cir. Nov. 10, 2021) (per curiam) (vacating order denying compassionate release because the district court "improperly speculated that [the defendant's] projected release date was altered as the result of misbehavior"); *United States v. Butts*, No. 21-6308, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam) (vacating order denying compassionate release where the sentencing court found the defendant "accountable for two murders by a preponderance of the evidence," but the district court "incorrectly found that [the defendant's] convictions included three counts of murder in furtherance of a drug trafficking crime"). Accordingly, the multiple

---

[3] Johnson incorrectly describes *Davis* as "affirming the district court's ruling which assessed the totality of factors when granting a sentence reduction." Def. Br. 32. Instead, the Court in *Davis* vacated and remanded the denial of compassionate release after "conclud[ing] that the district court abused its discretion by declining to address [the defendant's] change-in-law and rehabilitation arguments in its 'extraordinary and compelling reasons' analysis." 99 F.4th at 661.

errors in the district court's analysis here require at least vacatur, if not outright reversal.

## Conclusion

The Court should reverse the district court's order granting in part Johnson's motion for compassionate release. Alternatively, the Court should remand for the district court to consider Johnson's motion without reference to the improper factors.

Respectfully submitted,

Jessica D. Aber
United States Attorney


/s/
_____

Jacqueline R. Bechara
Assistant United States Attorney

**Certificate of Compliance**

I certify that this brief was written using 14-point Times New Roman typeface and Microsoft Word 2016.

I further certify that this brief does not exceed 6,500 words (and is specifically 6,397 words) as counted by Microsoft Word, excluding the table of contents, table of authorities, signature block, and this certificate.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.

_____/s/_____
Jacqueline R. Bechara
Assistant United States Attorney