**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-6896

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

 v.

SHAHEEM JOHNSON,

    Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Anthony John Trenga, Senior District Judge. (1:97-cr-00314-AJT-1)

Argued: January 29, 2025            Decided: July 8, 2025

Before NIEMEYER, GREGORY, and QUATTLEBAUM, Circuit Judges.

Affirmed by published opinion. Judge Gregory wrote the opinion, in which Judge Quattlebaum joined. Judge Niemeyer wrote a dissenting opinion.

**ARGUED:** Jacqueline Romy Bechara, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellant. Nathaniel Christian Wenstrup, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellee. **ON BRIEF:** Jessica D. Aber, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellant. Geremy C. Kamens, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellee.

GREGORY, Circuit Judge:

The government appeals the district court's order which reduced Shaheem Johnson's sentence under 18 U.S.C. § 3582(c)(1)(A) from two life sentences plus 790 months in prison to 35 years in prison. In so doing, the government argues that no extraordinary and compelling reasons exist to warrant compassionate release, and as such, the district court abused its discretion. Finding no abuse of discretion by the district court, we affirm.

I.

During the 1990s, Johnson engaged in a multi-state drug-trafficking enterprise. During the ongoing drug-trafficking enterprise, Johnson was directly responsible for the deaths of two people.[1] In one incident, Johnson, Damein Piranti, Rickey Piranti, and another coconspirator shot and killed Bernard Franklin. Sealed J.A. 741. In another incident, Johnson and a coconspirator hired hit man Eldon Brown to kill Richard Villa. Sealed J.A. 741–42. Johnson was ultimately arrested in August 1997 in relation to the drug-trafficking enterprise. Sealed J.A. 738.

As relevant here, Johnson, Damein, and Rickey were all charged with murder in aid of racketeering, in connection with the death of Bernard Franklin, pursuant to 18 U.S.C. § 1959(a)(1). Johnson was also charged in connection with Villa's death under

---

[1] In total, the criminal enterprise resulted in the deaths of five people. While Johnson was only convicted of offenses related to the deaths of Franklin and Villa, he nonetheless accepted responsibility for all five deaths due to his leadership role in the organization during the hearing on his motion for compassionate release. *See* J.A 677–79.

2

§§ 1959(a)(1) and (2), and 18 U.S.C. §§ 924(c) and 924(j).  In addition, Rickey was charged under § 1959(a)(1) in connection with the murder of another individual.

Johnson elected to exercise his right to a jury trial.  As relevant here, the jury convicted Johnson of voluntary manslaughter of Franklin using a firearm during a drug trafficking offense, in violation of 18 U.S.C. §§ 924(c)(1) and 924(j), and aiding and abetting the murder of Villa in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and (2).[2]  Johnson was ultimately sentenced to a total of two terms of life imprisonment plus 790 months in prison.  Johnson's convictions were confirmed on direct appeal.  *United States v. Johnson*, 219 F.3d 349, 352 (4th Cir. 2000).

After trial, Damein and Rickey, who pleaded guilty and assisted the government, received reduced sentences.  Damein previously pled guilty to his § 1959(a)(1) charge related to the Franklin killing and received a mandatory life sentence.  Sealed J.A. 733.  Damein's sentence was ultimately reduced to 20 years imprisonment, and he was subsequently released from prison in 2015.  *See* J.A. 76 (Docket No. 547); *see also* J.A. 418.  Rickey previously pled guilty to both of his § 1959(a)(1) charges related to the Franklin killing and the killing of another individual and received two concurrent mandatory life sentences.  J.A. 47 (Docket No. 233); *see also* Sealed J.A. 733–34.  Rickey's sentence was ultimately reduced to a total of 40 years imprisonment, and he is expected to be released from prison in 2032.  J.A. 77 (Docket No. 556); *see also* J.A. 418.

---

[2] Johnson was also convicted of other felonies, including various drug and money-laundering crimes and firearm offenses.  J.A. 137–38.

As for Brown, he was arrested in New York and indicted in December 1997 on various charges. *United States v. Eldon Brown*, No. 1:97-cr-1271 (S.D.N.Y. Dec. 10, 1997), Docket No. 1. Brown, who testified against Johnson, pleaded guilty to conspiracy to commit murder for hire, murder for hire, three counts of using a firearm during and in relation to a crime of violence, two counts of Hobbs Act robbery, and one count of making false statements. *United States v. Eldon Brown*, No. 1:97-cr-1271 (S.D.N.Y. Mar. 24, 2000), Docket No. 7; *see also* J.A. 706 fn. 32. Brown was ultimately sentenced to five years imprisonment and was released in 2003. *See id.*

In March 2021, Johnson filed a pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), which the government opposed. J.A. 87 (Docket Nos. 676, 687). In August 2021, counsel for Johnson filed a supplemental memorandum in support of Johnson's motion for compassionate release. As relevant here, the memorandum asserted that the sentencing disparities between Johnson's sentence and the sentences of Damein Piranti, Rickey Piranti, and Eldon Brown constituted an extraordinary and compelling reason for a sentence reduction. J.A. 416–19.

In August 2023, the district court issued an order granting Johnson's motion in part and accordingly, reducing Johnson's sentence from two terms of life plus 790 months in prison to 35 years in prison. J.A. 691–722. As relevant here, the district court found that the sentence disparities that existed between Johnson on one hand, and Damein, Rickey, and Brown on the other hand, weighed in favor of granting compassionate release. J.A. 706–08. Specifically, the district court found the fact that Damein and Rickey received 20 and 40 years, after pleading guilty to one and two § 1959(a)(1) murders, respectively, was

4

significant considering Johnson was convicted of one § 1959(a)(1) murder and "sentenced to life, notwithstanding that the jury found mitigating circumstances and that his participation was minor." J.A. 708. The district court further found "an even greater unwarranted sentencing disparity" existed between Johnson and Brown especially upon considering "Brown's five year sentence (which was potentially not related to the underlying conduct in this case whatsoever) and the jury's findings that (1) Johnson did not substantially plan or premediate Villa's killing, or procure payment to Brown for it, (2) Brown was the person that actually killed Villa, and (3) Johnson was found guilty of aiding and abetting." *Id*. (referencing Jury Special Verdict Form at J.A. 303–05). Hence, the district court found the sentencing disparities among Johnson, Damein, Rickey, and Brown constituted an extraordinary and compelling reason to grant compassionate release.[3]

The government now appeals the district court's order reducing Johnson's sentence under § 3582(c)(1)(A).

II.

"Under § 3582(c)(1)(A), a district court may reduce a sentence if it finds that a reduction is both warranted by 'extraordinary and compelling reasons' and also 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States*

---

[3] In addition to this factor, the district court found the following factors weighed in favor of granting compassionate release: (1) Johnson's rehabilitative efforts; (2) Johnson's age at the time of the offense; and (3) Johnson's § 924(c) stacked convictions. Moreover, the district court found the following factors was a consideration for granting compassionate release: (1) the underlying doctrinal sentiments in *United States v. Booker*, 543 U.S. 220 (2005) and (2) Johnson's lack of § 924(c) predicate offenses. J.A. 687–714.

5

*v. McCoy*, 981 F.3d 271, 280 (4th Cir. 2020). In the absence of an applicable policy statement, district courts are "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." *Id*. at 285 (emphasis in original).

We review a district court's decision on a motion for compassionate release for abuse of discretion. *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024). "A district court abuses its discretion when it acts arbitrarily or irrationally, fails to follow statutory requirements, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." *Id.*; *see also United States v. Centeno-Morales*, 90 F.4th 274, 280 (4th Cir. 2024) (quoting *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022)). A reviewing court may not substitute its judgment for that of the district court. *Bethea*, 54 F.4th at 831.

Here, the district court did not abuse its discretion in finding the sentence disparities between Johnson's sentence and the sentences of Damein Piranti, Rickey Piranti, and Eldon Brown weighed in favor of granting relief. First, Damein and Rickey essentially received 20 years for the § 1959(a)(1) conviction related to the Franklin killing, while Johnson received a life sentence for the Franklin killing. But the only difference between Johnson and Damein and Rickey is the mere fact that Johnson elected to exercise his right to a jury trial. While Damein and Rickey cooperated with the government, the district court did not abuse its discretion in concluding that such cooperation, without more, did not justify such a vast disparity between Johnson's sentence and Damein and Rickey's sentences.

6

Second, and as the district court acknowledged, an even greater disparity exists between Johnson and Brown. At best, Brown served five years for the killing of Villa, and at worst, did not serve any time related to the killing of Villa. This is in direct contrast to Johnson, who received a mandatory life sentence for the killing of Villa. The district court was entitled to consider this disparity between Johnson and Brown, especially considering the jury found that Johnson was not the trigger man, did not substantially plan or premediate Villa's killing, or procure payment to Brown for the killing. It did not abuse its discretion in relying on the fact that one individual received a life sentence for a killing and another individual (possibly) received five years for the same killing, merely because the latter individual assisted the government. Moreover, the ambiguity surrounding the underlying conduct of Brown's charges does not change our calculus, as district courts "generally exercise a wide discretion in the sources and types of evidence used to craft appropriate sentences." *Concepcion v. United States*, 597 U.S. 481 (2022). As such, it was not an abuse of discretion for the district court to find that such a significant sentence disparity weighed in favor of granting compassionate release.

My colleague in dissent shares a different view and concludes that Johnson's sentencing disparity does not constitute an extraordinary and compelling reason that warrants relief. *See* Dissenting Op. at 4. But not so. In determining whether an extraordinary and compelling reason exists to grant a defendant compassionate release, and in addition to the various circumstances outlined in § 1B1.13(b), § 1B1.13(b) allows a district court to contemplate "other reasons" that may constitute "extraordinary and compelling." § 1B1.13(b)(5). A district court may consider this reason by itself or in

7

combination with any other reasons outlined in § 1B1.13(b), so long as they "are similar in gravity[.]" § 1B1.13(b)(5). In other words, there is no exhaustive list as to what may be considered extraordinary and compelling, and it was well within the district court's discretion to find "other reasons," such as Johnson's sentencing disparity, constituted an extraordinary and compelling factor that weighed in favor of granting relief. Interestingly, the dissent cannot identify any precedent in this circuit that holds a sentencing disparity alone is not enough to constitute an extraordinary and compelling reason to grant compassionate release. Instead, the dissent relies on cases that are outside of this circuit, unpublished, or both—none of which have any binding effect on this decision or Court.

The dissent's other argument fares no better. As previously mentioned, the district court did not abuse its discretion in finding that Damein's and Rickey's cooperation with the government did not justify the disparity between their sentences and Johnson's sentence. The dissent attempts to explain why the district court's finding is incorrect, but respectfully, whether reasonable minds can differ is not the standard for reversal. Rather, the standard for reversal is abuse of discretion, which is not present here.

\*     \*     \*

Accordingly, given the vast disparities that exist between Johnson's sentence, and the sentences of Damein, Rickey, and Brown, it was well within the district court's discretion to find such disparities weighed in favor of granting relief. In addition, because we find that this was not an abuse of discretion, we decline to address whether the district

8

court abused its discretion in finding other factors also weighed in favor of granting compassionate release.[4]

## III.

For the foregoing reasons, the district court's ruling is

*AFFIRMED.*

---

[4] The government does not argue that the district court erred in its evaluation of the 18 U.S.C. § 3553(a) factors, and as such, no analysis on these factors is necessary.

NIEMEYER, Circuit Judge, dissenting:

Shaheem Johnson led a large, multi-year drug conspiracy that was responsible for five killings, and he was charged for his personal involvement in two of the killings. A jury convicted him on 12 counts, two of which supported terms of life imprisonment under 18 U.S.C. § 1959(a)(1) (murder in aid of racketeering activity) and 21 U.S.C. § 848 (engaging in a continuing criminal enterprise). The district court sentenced Johnson in 1999 to two life terms for the convictions on those counts, plus 790 months' imprisonment for the convictions on the remaining counts.

Three times thereafter, Johnson filed motions in the district court challenging his sentence — once in 2001, again in 2014, and yet again in 2015 — and the district court rejected those challenges.

Finally, in March 2021, Johnson filed a motion under 18 U.S.C. § 3582(c)(1)(A), commonly called a motion for compassionate release, and a different district judge granted it and reduced Johnson's sentence to 35 years' imprisonment. The court relied on the disparity in sentences given to three of Johnson's coconspirators — Rickey Piranti, Damein Piranti, and Eldon Brown. It reviewed the conduct of each of those coconspirators based on trial evidence, the charges that the prosecutors chose to lodge against them, and the sentences that the district courts imposed on them, concluding:

> On balance, there are sentencing disparities that weigh in favor of granting relief. Damein and Rickey ultimately received 20 and 40 years, respectively, after pleading guilty to one and two § 1959(a)(1) murders, respectively. By contrast, Johnson was convicted of one § 1959(a)(1) murder and sentenced to life, notwithstanding that the jury found mitigating circumstances and that his participation was minor. There also exists an even greater unwarranted sentencing disparity between Johnson and Brown, given Brown's five year

10

sentence (which was potentially not related to the underlying conduct in this case whatsoever) and the jury's findings that (1) Johnson did not substantially plan or premeditate Villa's killing, or procure payment to Brown for it, (2) Brown was the person that actually killed Villa, and (3) Johnson was found guilty of aiding and abetting.

The majority opinion now affirms the district court on the basis that a sentencing disparity existed, yielding simply to the discretion exercised by the district court in deciding Johnson's motion. The majority holds:

> Here, the district court did not abuse its discretion in finding the sentence disparities between Johnson's sentence and the sentences of Damein Piranti, Rickey Piranti, and Eldon Brown weighed in favor of granting relief.
>
> \*   \*   \*
>
> [G]iven the vast disparities that exist between Johnson's sentence, and the sentences of Damein, Rickey, and Brown, it was well within the district court's discretion to find such disparities weighed in favor of granting relief.

*Supra* at 6–8.

The majority, however, conducted no analysis to apply the requirements imposed by law for granting motions for compassionate release. Had it done so, it could not *legally* or *factually* have affirmed the district court's errant reduction in Johnson's sentence. Disparities in sentencing are not *legally* a basis for granting a motion for compassionate release under § 3582(c)(1)(A). And, in any event, the factual circumstances of this case do not support a finding of unwarranted disparities. I address these two points in order.

I

Congress has made clear that criminal judgments must remain final and may not be opened by district judges except in specified, narrow circumstances. Section 3582(c)

11

unequivocally so provides, stating that a court "may not modify a term of imprisonment once it has been imposed" except as therein provided. 18 U.S.C. § 3582(c); *accord Dillon v. United States*, 560 U.S. 817, 819 (2010). A motion for compassionate release under § 3582(c)(1)(A) is, however, one such exception. That provision authorizes a district court to reduce a sentence based on developments that have occurred after the original sentence was imposed.

Specifically, § 3582(c) authorizes a court to reduce a term of imprisonment only after it has (1) considered the 18 U.S.C. § 3553(a) factors as they may be relevant, (2) found that "extraordinary and compelling reasons warrant such a reduction," and (3) found that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Crawley*, ___ F.4th ___, No. 24-6257, 2025 WL 1634789, at *3 (4th Cir. June 10, 2025); *United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). And to carry out the third requirement, Congress directed the Sentencing Commission to promulgate and distribute policy statements for the implementation of § 3582(c). *See* 28 U.S.C. § 994(a)(2)(C). It directed further that the Commission "describe *what should be considered* extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A), "including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t) (emphasis added). The Sentencing Commission has done just that, promulgating U.S.S.G. § 1B1.13, which appropriately lists what may be considered as extraordinary and compelling reasons for a sentence reduction under § 3582(c)(1)(A).

The policy statement in § 1B1.13(b) lists six changes in circumstances following the original sentencing that qualify as "extraordinary and compelling reasons": (1) the defendant's medical circumstances, such as his suffering from a terminal illness or a serious condition that substantially diminishes his ability to provide self-care; (2) the defendant's experiencing serious deterioration in physical or mental health because of his age; (3) the defendant's family circumstances, such as the need to care for a close family member and the unavailability of another caregiver; (4) the defendant's having suffered sexual abuse or physical abuse at the hands of prison personnel; (5) other reasons of similar gravity; and (6) a change in the law while the defendant is serving an unusually long sentence. *See* U.S.S.G. § 1B1.13(b). Consistent with the finality of judgments, however, the list does not purport to authorize a reassessment of the facts leading to the defendant's conviction or the factors considered in imposing the original sentence, such as sentencing disparities addressable under § 3553(a)(6). Those matters fall within the purview of the court at trial, and § 3582(c) does not authorize courts to review an underlying conviction or final sentence. That is the role of a motion filed under 28 U.S.C. § 2255.

Because a motion for compassionate release serves to reduce a defendant's already-final sentence on the basis of post-sentence developments, the "facts that existed when the defendant was sentenced cannot later be construed as 'extraordinary and compelling' justifications for a sentence reduction." *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021). As explained in the legislative history, Congress intended that the role of § 3582(c)(1)(A) was to address "unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by *changed circumstances*." S. Rep. No. 98-225, at

13

55 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3238 (emphasis added); *see also Hunter*, 12 F.4th at 569–70.  And while district courts are given discretion to grant motions for compassionate release based on such subsequent developments, their discretion is clearly limited.  *Hunter*, 12 F.4th at 569 (noting § 3582(c)(1)(A)'s "narrow scope").

More particularly, the courts have uniformly concluded that *sentencing disparities*, such as those at issue here, are not a ground for granting a motion for compassionate release, regardless of whether those disparities existed at the time of sentencing or arose thereafter.  *See United States v. Fernandez*, 104 F.4th 420, 428 (2d Cir. 2024) (holding that the defendant's "sentencing disparity [with his codefendants] is not an 'extraordinary and compelling reason[]' to reduce his sentence under the plain meaning of the statute" (alteration in original)), *cert. granted on other grounds*, 2025 WL 1496486 (May 27, 2025); *United States v. DeFoggi*, No. 22-2327, 22-2394, 2023 WL 4112142, at *2 (8th Cir. June 22, 2023) (per curiam) (holding that the disparity between the defendant's sentence and that of other defendants using the same child-pornography site was not an extraordinary and compelling reason for compassionate release); *Hunter*, 12 F.4th at 571–72 (noting that "even if the sentence disparity did not exist at the time Hunter was sentenced, subsequent leniency in another defendant's case says nothing about how Hunter's personal circumstances have changed since he was sentenced"); *United States v. Arojojoye*, 806 F. App'x 475, 477–78 (7th Cir. 2020) (labeling as "dubious" the argument that a "disparity between [the defendant's] sentence and his codefendant's" could be an extraordinary and compelling reason for compassionate release).  Indeed, in an unpublished opinion, we have ruled similarly, rejecting a defendant's argument that extraordinary and compelling

14

circumstances existed because "his sentence was too harsh when compared to his codefendants." *United States v. Melvin*, No. 23-6011, 2023 WL 5974872, at *2 (4th Cir. Sept. 14, 2023) (per curiam). And this consensus exists for good reason — repackaging the § 3553(a) sentencing factors, such as sentencing disparities, as "extraordinary and compelling reasons" would negate § 3582(c)'s rule of finality and ignore its narrow scope. The provision, so interpreted, would permit a court to alter any sentence with which it did not agree in the first instance. In addition, such an interpretation would render most of § 3582(c) superfluous. *Melvin*, 2023 WL 5974872, at *2 (quoting *Hunter*, 12 F.4th at 569).

Despite the clear commands of § 3582(c) and the uniform array of relevant cases, the district court engaged in a comprehensive review of the role of each defendant in the conspiracy, reassessing their respective culpability and concluding that the sentences imposed created unwarranted disparities. And yet more grievous, the majority now approves this belated retrial. It states that "Damein and Rickey essentially received 20 years for . . . the Franklin killing, while Johnson received a life sentence for the Franklin killing," *supra* at 6, thus creating an unwarranted disparity. And as to Brown, the majority holds that "[t]he district court was *entitled to consider* this disparity between Johnson and Brown, especially considering the jury found that Johnson was not the trigger man, did not substantially plan or premeditate Villa's killing, or procure payment to Brown for the killing." *Supra* at 7 (emphasis added). In so holding, the majority, too, engages in a retrial, reviewing the facts proved at trial, the charging decisions of the prosecutors, and the original sentencing disparities. At bottom, it upholds what is essentially nothing more than one district judge's disagreement with Johnson's mandatory life sentence, as well as its

15

own. Doing so is plainly contrary to law. *See* 18 U.S.C. § 3582(c)(1)(A); 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(b). And I would reverse on that basis.

II

Even if the majority were authorized to consider the evidence introduced at trial and disparities in sentencing as reasons for affirming the district court's reduction of Johnson's sentence 20 years later, it nonetheless erred in failing to recognize that a disparity between a defendant who went to trial and his codefendants who pleaded guilty, cooperated, and provided the government with substantial assistance is not unwarranted.

The district court looked at the sentences of five coconspirators in considering Johnson's disparity argument. They may be described as follows: (1) Johnson received two life sentences, at least one of which was a statutory minimum sentence, for convictions under 18 U.S.C. § 1959(a)(1) and 21 U.S.C. § 848, plus 790 months for his remaining convictions; (2) Johnson's brother, Raheem Johnson, received eight life sentences, including four statutory minimum life sentences for violations of § 1959(a)(1), and 528 months for his other counts of conviction; (3) Damein Piranti pleaded guilty to one count of murder in aid of racketeering activity under § 1959(a)(1), and he too received the statutory minimum life sentence for this conviction; (4) Rickey Piranti, likewise, pleaded guilty to two counts of murder in aid of racketeering activity under § 1959(a)(1) and accordingly received two statutory minimum life sentences for his convictions; and finally (5) Eldon Brown, who was not prosecuted with the other coconspirators in the Eastern District of Virginia, but rather in the Southern District of New York, pleaded guilty to,

16

among other things, two counts of murder for hire under 18 U.S.C. § 1958 and three counts of using a firearm during a crime of violence, and he received a sentence of five years' imprisonment. The record does not, however, provide any explanation of the New York prosecutor's charging decision with respect to Brown or the circumstances of his guilty plea, other than to indicate that he had cooperated.

First, it is apparent that there was *no unwarranted disparity* with respect to the sentence imposed on Johnson and the sentences imposed on Damein Piranti and Rickey Piranti. They all received *statutory minimum life sentences*. Both Damein and Rickey, however, chose to plead guilty and to cooperate with the government, and the government in turn chose to file a motion under Rule 35 to reduce their sentences based on its judgment that they provided "substantial assistance in investigating or prosecuting another person." Fed. R. Crim. P. 35(b)(1). Accordingly, the sentencing judge, after considering their substantial assistance, reduced Rickey Piranti's sentence to 40 years' imprisonment and Damein Piranti's to 20 years' imprisonment. Because of the difference in circumstances created by their guilty pleas and cooperation, there was no unwarranted disparity; the Piranti brothers were rewarded for pleading guilty and saving judicial resources and for helping the government in other prosecutions, whereas Johnson went to trial and was found guilty. *See Fernandez*, 104 F.4th at 428 (observing that our system "often results in individuals who accept a plea bargain receiving shorter sentences than other individuals who are less morally culpable but take a chance and go to trial" (quoting *Missouri v. Frye*, 566 U.S. 134, 144 (2012))).

17

Had the district court actually assessed the Piranti brothers' different circumstances, it would have been left with the uncontrovertible conclusion that there was no unwarranted disparity among the sentences.

This conclusion is well-supported by case law. For example, we have held that "individuals who go to trial and those who plead guilty" are "not similarly situated for sentencing purposes." *United States v. Susi*, 674 F.3d 278, 288 (4th Cir. 2012). And we have held similarly that defendants who cooperate are not in a similar position to persons who go to trial — their cooperation is "more than sufficient to justify the different sentences." *United States v. Jeffery*, 631 F.3d 669, 679 (4th Cir. 2011); *United States v. Perez-Pena*, 453 F.3d 236, 242–43 (4th Cir. 2006). Thus, a defendant who pleads guilty, cooperates, and receives the blessing of both the prosecutor and the court under Rule 35 is in a materially different circumstance from a defendant who goes to trial. *See Pepper v. United States*, 562 U.S. 476, 503 (2011) (noting that a disparity arising from a prosecutor's exercise of discretion is not unwarranted (citing *United States v. LaBonte*, 520 U.S. 751, 761–62 (1997))). Yet, the district court and the majority not only fail to consider and apply these principles, they have not even addressed them in any meaningful manner.

As to Eldon Brown, there is no basis in the record to understand whether there was an unwarranted disparity or not, a reality that the district court appropriately recognized. Brown was charged in New York with crimes different from those charged against Shaheem Johnson, Raheem Johnson, Damein Piranti, and Rickey Piranti. The latter four were all charged under § 1959(a)(1) and found guilty, thus receiving mandatory life sentences. Brown, however, was charged with lesser offenses, and the record shows that

18

he cooperated with the government and received a five-year sentence. No further details were provided to the district court, and the court well recognized that Brown's sentence was "potentially not related to the underlying conduct in this case whatsoever." Indeed, all agree that Brown, unlike Johnson, may not even have been charged in New York with Villa's killing. Because the record does not reveal Brown's circumstances, the district court could not have concluded one way or the other whether there was an unwarranted disparity between him and Johnson. The majority nonetheless concludes that "[t]he district court was entitled to consider this disparity between Johnson and Brown," *supra* at 7, even though that disparity was not demonstrated to be unwarranted. And the majority can cite nothing in the record suggesting otherwise.

\*       \*       \*

The majority's holding is extraordinary and an extreme outlier that is unsupported by law or fact. It fails to abide by the legal limitations imposed by § 3582(c)(1)(A) for the reduction of sentences, and it assumes that the mere existence of a disparity makes it unwarranted. In the name of "discretion," the majority blesses what can only be described as the district court's disagreement with Johnson's mandatory minimum sentence of life imprisonment as too harsh. But not even discretion can save the district court's departure from the law.

I would reverse.